**Mary LOTT and Sue Hickman**

v.

**Clifford RIGBY and The State of Georgia Department of Human Resources.**

Civ. No. 2:89–CV–0088–WCO.

United States District Court,
N.D. Georgia,
Gainesville Division.

Sept. 20, 1990.

Timothy J. Sweeney, Harman Owen Saunders & Sweeney, Atlanta, Ga., for defendants.

Janet Elizabeth Hill, Nelson & Hill, Athens, Ga., for plaintiffs.

## ORDER

O'KELLEY, Chief Judge.

This case is presently before the court on the plaintiffs' motion for summary judgment. Summary judgment is only proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact, and that the moving party is entitled to a judgment as a matter of law." Fed.R. Civ.P. 56(c). Because the procedure de-

prives the parties of a trial on the issues, the court must be careful to ensure that only those claims for which there is no need for a factual determination as to any material fact are disposed of by summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

In addition, a court evaluating a summary judgment motion must view the evidence in the light most favorable to the non-movant. *Samples v. City of Atlanta*, 846 F.2d 1328, 1330 (11th Cir.1988); *Tippens v. Celotex Corp.*, 805 F.2d 949, 953 (11th Cir. 1986), *rehearing denied*, 815 F.2d 66 (1987). To survive a motion for summary judgment, the non-moving party need only present evidence from which a jury might return a verdict in his favor. *Samples*, 846 F.2d at 1330.

## FACTUAL BACKGROUND

The plaintiffs in this case, Mary Lott and Sue Hickman, filed suit against the defendants, Clifford Rigby and the Hall County Board of Health, to recover unpaid overtime compensation to which they claim entitlement.

The plaintiffs were employed as houseparents at the Stephens County Independent Group Residence for the Mentally Retarded. Ms. Lott was employed from June, 1985 until November, 1989, and Ms. Hickman was employed from September, 1988 until May, 1990.

The Stephens County Independent Group Residence [hereinafter referred to as the "Group Residence"] is a unit of the North Georgia Mental Health/Mental Retardation/Substance Abuse Center. As program director, Mr. Rigby provides the top management function for the program. The Group Residence is a public institution funded with state money.

Ms. Lott worked as a part-time houseparent for the Group Residence from June 17, 1985 until August 1, 1986 at which time she was promoted to full-time houseparent. Ms. Hickman worked as a full-time houseparent at all times during her employment with the Group Residence.

As a part-time houseparent, Ms. Lott was on duty 20 hours a week (this schedule often required her to sleep on the premises). As a full-time houseparent, from August 1, 1986 through February 7, 1988, Ms. Lott was on duty 16 hours in a 24-hour period, five consecutive days per week. Of these hours, 8 hours were worked during the day and the remaining 8 hours per day were spent sleeping on the premises of the Group Residence. Her typical schedule was working 4:00 p.m. until 8:00 a.m. Monday through Friday (she was allowed to sleep from 10:00 p.m. until 6:30 a.m.). From 8:00 a.m. until 4:00 p.m., Ms. Lott was relieved of all responsibilities and was not expected to work. She was compensated for 8 hours of work during each of these 24 hour periods. Sleep time was deducted from her compensation. At no time was Ms. Lott required to be on duty 24 hours a day.

From September 21, 1988 until April, 1989, Ms. Hickman worked from 4:00 p.m. until 8:00 a.m. (she was allowed to sleep from 10:00 p.m. until 6:30 a.m.), five consecutive days per week. She was not compensated for sleep time. At no time was Ms. Hickman required to be on duty 24 hours a day.

At approximately the end of April, 1989, the defendant discontinued its sleep time policy with the plaintiffs and hired a sleep time staff to stay at the Group Residence during sleep hours. This sleep time staff is compensated for every hour that they spend on the premises. The plaintiffs were not compensated for any of the hours that they slept on the premises of the Group Residence, except that in February, 1989, the plaintiffs were compensated for sleep time at the rate of 1½ times their hourly rates.

The defendant's sleep time policies were formulated based on Department of Human Resource policies and procedure, and Department of Labor guidelines. In March, 1990, the Department of Labor conducted an audit of the Mental Retardation group homes and investigated the method of compensation of houseparents. The defendant Hall County was forced to compen-

sate certain houseparents for sleep time, including Shelia Mance, a houseparent at the Group Residence.

## ANALYSIS

*The FLSA and the "Companionship Services" exemption*

The central issue in this case is whether the plaintiffs were exempt from the Fair Labor Standards Act [FLSA] under the "companionship services" exemption, 29 U.S.C. § 213(a)(15). The FLSA excludes from 29 U.S.C. § 207, its minimum wage/hours coverage,[1] the following employees:

> any employee employed on a casual basis in domestic service employment to provide companionship services or any employee employed in domestic service employment to provide companionship services for individuals who (because of age or infirmity) are unable to care for themselves (as such terms are defined and delineated by regulations of the Secretary). 29 U.S.C. § 213(a)(15) (1988).

> "Companionship Services" is defined as: ... those services which provide fellowship, care and protection for a person ... such as meal preparation, bed making, washing of clothes, and other similar services. They may also include the performance of general household work: Provided, however, that such work is incidental, i.e., does not exceed 20 percent of the total weekly hours worked. 29 C.F.R. § 552.6 (1989).

The duties of a houseparent can be divided into four categories: (1) General Responsibilities (i.e., fostering a "home-like" atmosphere and performing related activities), (2) Client Supervision/Client–Related Household Work, (3) Program Responsibilities, and (4) General Household Work. The plaintiffs provided "companionship services" as defined by 29 C.F.R. § 552.6. The major purpose of a houseparent is being there; no special training or education is required.

 The "companionship services" exemption to FLSA applies only to "domestic service employment." Therefore, in order for the exemption to apply to the plaintiffs, they must qualify as "domestic service employees." Federal regulation 29 C.F.R. § 552.3 provides:

> As used in section 13(a)(15) of the Act, the term "domestic service employment" refers to services of a household nature performed by an employee in or about a *private home* (permanent or temporary) of the person by whom he or she is employed. The term includes employees such as cooks, waiters, butlers, valets, maids, housekeepers, governesses, nurses, janitors, laundresses, caretakers, handymen, gardeners, footmen, grooms, and chauffeurs of automobiles for family use. It also includes babysitters employed on other than a casual basis. This listing is illustrative and not exhaustive. [emphasis added] 29 C.F.R. § 552.3 (1989).

The regulation is unambiguous and clearly indicates that being employed in a private home is an integral part of the definition of a "domestic service employee."[2]

A 1975 administrative opinion, WH–328 written by Acting Wage/Hour Administrator Warren D. Landis, is directly on point

---

1. § 207(*l*) provides that "No employer shall employ any employee in domestic service in one or more households for a workweek longer than forty hours unless such employee receives compensation for such employment in accordance with subsection (a) of this section." 29 U.S.C. § 207(*l*) (1988). § 207(a)(1) provides that:

> Except as otherwise provided for in this section, no employer shall employ any of his employees ... for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate

at which he is employed. 29 U.S.C. § 207(a)(1) (1988).

2. Contrary to what the defendant contends, the provision in 29 C.F.R. § 552.3 that the listing is illustrative and not exhaustive indicates that "domestic services" may include similar services to those performed by employees such as "cooks, waiters, butlers ..." etc. (i.e., the list of employees performing domestic services is not exhaustive). The "illustrative and not exhaustive" provision does not, as defendant argues, suggest that "domestic service employment" may sometimes be provided outside the private home of the employer.

with this case.[3] It was issued in response to a letter requesting advice on whether or not the "companionship services" exemption would apply to houseparents employed by the county to provide care for mentally retarded persons in residential county homes. The opinion states in part:

> With regard to its legislative history, the Congress intended that domestic service be considered as relating to services of a household nature performed by an employee in or about the private home of the person by whom he or she is employed. Services performed outside of a private home would not be within the term "domestic service." Accordingly, the exemption would not apply to employees providing care to institutionalized persons ... even though they are in a residential home setting. Wage and Hour Opinion WH–368, 91 W.H.M. 1031 (Nov. 25, 1975).

The opinion indicates that Congress created the "companionship services" exemption to enable guardians of the elderly and disabled to financially afford to have their wards cared for in their own private homes as opposed to institutionalizing them. The opinion further suggests that a residential home, such as the "Group Residence" in the present case, is *not* a private home for purposes of applying the exemption.

As the plaintiffs correctly point out, the legislative history of the "companionship services" exemption is consistent with Administrator Landis' interpretation in opinion WH–368 that "domestic services employment" was intended to only include employees performing domestic services in a private home.[4] The legislative history shows:

The term "domestic service" employees is not defined in the Act [FLSA]. However, the generally accepted meaning of domestic service relates to services of a household nature performed by an employee in or about a private home of the person by whom he or she is employed. *The domestic service must be performed in a private home which is a fixed abode of the individual or family.* [emphasis added] H.R.Rep. No. 913, 93rd Cong., 2nd Sess., *reprinted in,* 1974 U.S. Code Cong. & Admin.News 2811, 2845.

The defendant contends that the Stephens County Independent Group Residence is the private home of its clients because it is their sole residence. However, the plaintiffs logically argue that if the defendant is correct, every publicly funded institution would be a "private home" because it often is the sole residence of clients while they are present at the institution. The distinction between "institution" and "private home" would thus be eliminated. Congress unambiguously stated that "domestic service must be performed in a private home which is the fixed abode of the individual or family. A separate and distinct dwelling *maintained by the individual or family* in an apartment, house, or hotel may constitute a private home." *Id.* Certainly the "Group Residence" is not maintained by its clients even though they may participate in parts of its upkeep in order to learn home management skills. Clearly, Congress intended that a "private home" be distinct from a state maintained facility, and that an individual or family be the employer of a domestic service employee, not the state or county as in the present

---

3. The defendant cites *Bright v. Houston Northwest Med. Center Survivor* for the proposition that such interpretive regulations are not controlling. 888 F.2d 1059 (1989). However, in *Skidmore v. Swift & Co.,* the Supreme Court noted that Wage and Hour Administrators' interpretations under the FLSA, "while not controlling upon the courts by reason of their authority, do constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance." 323 U.S. 134, 140, 65 S.Ct. 161, 164, 89 L.Ed. 124 (1944).

4. The plaintiffs also correctly note that the legislative history of 29 U.S.C. § 213(a)(15) reveals that Congress used the term "domestic service employment" interchangeably with the terms "domestic service in households," "private household workers," and "household employment," thus suggesting that "domestic service employment" applies only to employees working in a private home. H.R.Rep. No. 913, 93rd Cong., 2nd Sess., *reprinted in,* 1974 U.S.Code Cong. & Admin.News 2811, 2842–2843.

case.[5]

A Ninth Circuit case, *McCune v. Oregon Senior Services Division,* is cited by both the plaintiffs and defendant. 894 F.2d 1107 (9th Cir.1990). In *McCune,* live-in attendants for the disabled and infirm, who provided domestic services in private homes, brought suit against the state in-home service agencies asserting coverage under the minimum wage provisions of the FLSA. The clients paid for the live-in attendants' services with federal and state assistance. The district court granted the defendant's motion for summary judgment on the ground that since the plaintiffs performed "companionship services" within the meaning of the FLSA exemption (and did not fall under either exclusion to the exemption), they were exempt from the FLSA as a matter of law. The Ninth Circuit affirmed. In discussing the policy reasons for applying the "companionship services" exemption, the court stated

> We are informed that these critical services reach more elderly or infirm individuals than they otherwise would precisely because the careproviders are exempt from the FLSA. We also note that many private individuals, who do not benefit from federal and state assistance, may also be forced to forego the option of receiving these services in their homes if the cost of the services increases. The only alternative for these individuals may be institutionalization. *McCune,* 894 F.2d at 1110.

The defendant contends that the same strong policy reasons for applying the "companionship services" exemption to the publicly funded plaintiffs in *McCune* are equally persuasive in determining its application to the present plaintiffs. The only difference between the *McCune* plaintiffs and the present plaintiffs is that the *McCune* plaintiffs were employed in private homes. However, it is precisely this distinction that determines whether or not the plaintiffs are "domestic service employees" and thus, whether or not the "companionship services" exemption applies to them.

The plaintiffs logically argue that if the Ninth Circuit held that the "companionship services" exemption was created to allow elderly and disabled individuals to *afford* care in their own homes, instead of an institution, it must also hold that the exemption applies only to persons employed to provide such services in private homes.[6]

■ The plaintiffs were not "domestic service employees" because they were not employed in a private home, thus the "companionship services" exemption which applies to such employment cannot apply to them. Therefore, the plaintiffs were not exempt from the minimum wage and overtime requirements of the FLSA. Accordingly, the plaintiffs' motion for summary judgment as to the issue of FLSA exemption is granted.

*Sleep Time Compensation*

■ Under certain circumstances, an employee is considered to be working even

---

**5.** The defendant also argues that the "Group Residence" is not a business enterprise, apparently in response to Congress' statement that "a dwelling house used primarily as a boarding or lodging house for the purpose of supplying such services to the public as a business enterprise is not a private home." H.R.Rep. No. 913, 93rd Cong., 2d Sess., *reprinted in,* 1974 U.S.Code Cong. & Admin.News 2811, 2845.

The plaintiffs correctly point out that the term "enterprise," as defined in 29 U.S.C. § 203(r), is "the related activities performed (either through unified operation or common control) by any person or persons for a common business purpose ..." and activities performed by any person or persons "in connection with the operation of a hospital, an institution primarily en-

gaged in the care of the sick, the aged, the mentally ill or defective who reside on the premises of such institution ... or ... in connection with the activities of a public agency, shall be deemed to be activities performed for a business purpose." 29 U.S.C. § 203(r) (1988). Thus, the operation of an institution for the mentally retarded, such as the "Group Residence," is a "business enterprise," and is therefore, not a "private home."

**6.** The defendant argues that the "Group Residence" is a "private home," and that without the "companionship services" exemption, the alternative facing its residents is institutionalization. However, as discussed earlier, clearly the state funded and managed "Group Residence" is a type of institution and is not a private home.

though he or she is permitted to sleep. 29 C.F.R. § 785.21 provides

> An employee who is required to be on duty for less than 24 hours is working even though he is permitted to sleep or engage in other personal activities when not busy ... It makes no difference that [the employee] is furnished sleeping facilities. [The employee's] time is given to her employer. She is required to be on duty and the time is worktime. 29 C.F.R. § 785.21 (1989).

The defendant argues that an agreement between an employee and employer to deduct sleep time from compensation is permitted. However, this is only true if the employee is on duty 24 hours or more and is provided private quarters in a home-like atmosphere, or if the employee resides on the employer's premises on a permanent basis or for extended periods of time. 29 C.F.R. § 785.22 states that:

> Where an employee is required to be on duty for 24 hours or more, the employer and the employee may agree to exclude bona fide meal periods and a bona fide regularly scheduled sleeping period of not more than 8 hours worked, provided adequate sleeping facilities are furnished by the employer and the employee can usually enjoy an uninterrupted night's sleep. Where no expressed or implied agreement to the contrary is present, the 8 hours of sleeping time ... constitute hours worked. 29 C.F.R. § 785.22 (1989).

29 C.F.R. § 785.23 provides that:

> An employee who resides on his employer's premises on a permanent basis or for extended periods of time is not considered as working all the time he is on the premises. Ordinarily, he may engage in normal private pursuits and thus have enough time for eating, sleeping, entertaining, and other periods of complete freedom from all duties when he may leave the premises for purposes of his own. 29 C.F.R. § 785.23 (1989).

The plaintiffs in the present case were on duty less than 24 hours per day for the entire duration of their employment; however, whether they resided on the defendant's premises for an extended period of time pursuant to 29 C.F.R. § 785.23 is clearly a question for the trier of fact. Both the plaintiffs and the defendant cite Wage and Hour Memorandum 88.48 as defining under what circumstances an employee must be compensated for sleep time. The memorandum states in part:

> A major concern for employers operating residential care (group home) facilities continues to be the issue of what constitutes working time (hours worked) for their employees ... The duties of most employees of such ... facilities require them to remain on their employer's premises overnight. Although permitted to sleep, group home employees are required to remain on the premises to be available to clients in case of emergencies or personal crises ... residing on the employer's premises 120 hours a week or 5 consecutive days or nights would qualify an employee as residing on the premises for extended periods of time within the meaning of § 785.23 ... In order to deduct sleep time for ... employees, such employees must be provided private quarters in a homelike environment. Further, reasonable agreement must be reached, in advance, regarding compensable time. Department of Labor Wage and Hour Memorandum 88.48 (June 30, 1988)

■ Clearly, the following are genuine issues of material fact for trial in the present case: (1) whether the plaintiffs resided on the defendant's premises for an extended period of time pursuant to § 785.23, (2) whether the defendant provided the plaintiffs private sleeping quarters in a homelike environment, and (3) whether the agreement, if any, between the plaintiffs and the defendant to deduct sleep time from compensation was reasonable.[7] Ac-

---

**7.** The defendant contends that the plaintiffs are subject to a two-year statute of limitations because they have not demonstrated that the defendant willfully violated the FLSA. *See McLaughlin v. Richland Shoe Co.,* 486 U.S. 128,

108 S.Ct. 1677, 100 L.Ed.2d 115 (1988) (held that an employee must show employer "willfully" violated FLSA in order to obtain benefit of three-year statute of limitations). Whether the plaintiffs can show that the defendant willfully

cordingly, the plaintiffs' motion for summary judgment as to the issue of sleep time compensation is denied.

## CONCLUSION

For the reasons set forth above, the plaintiffs' motion for summary judgment is granted as to the issue of FLSA exemption, and is denied as to all other issues including sleep time compensation.

IT IS SO ORDERED.

violated the FLSA is also a factual determination that must be made by the trier of fact at trial.