John R. LINN, Plaintiff,

v.

**DEVELOPMENTAL SERVICES OF TULSA, INC., an Oklahoma Corp., Defendant.**

No. 94–C–460–K.

United States District Court, N.D. Oklahoma.

May 11, 1995.

Steven R. Hickman, Frasier & Frasier, Tulsa, OK, for plaintiff.

Steven A. Heath, William C. Chevaillier, Mysock & Chevaillier, Tulsa, OK, for defendant.

### *ORDER*

KERN, District Judge.

Now before the Court is the Motion of Defendant, Developmental Services of Tulsa, Inc. ("Defendant"), for summary judgment against the allegation by Plaintiff John Linn ("Plaintiff") that Defendant failed to pay overtime compensation as required by the Fair Labor Standards Act of 1938, as amended (hereinafter "FLSA"), 29 U.S.C. § 201 et seq.

### I. *Facts*

Plaintiff was employed as a Habilitation Training Specialist and paid compensation at straight-time pay while working as an employee for Defendant from November 1991 through March 1994. Plaintiff provided fellowship and protection for individuals of advanced age and physical and mental infirmities who could not care for their own needs. Plaintiff provided personal care services for such individuals, assisting clients with their personal services such as feeding, bathroom needs, making beds, washing clothes, bathing, brushing of teeth, and preparing meals.

Plaintiff was not a registered nurse nor a licensed practical nurse. However, Plaintiff performed services that required certification, after limited training, from the state of Oklahoma.

### II. *Discussion*

Defendant submits that it is entitled to summary judgment on the grounds that Plaintiff was not engaged in commerce as defined by the FLSA; because Plaintiff's employment as a companion is exempt from overtime pay under the FLSA; and that a two-year statute of limitations is applicable, since Defendant did not act willfully in failing to pay overtime to Plaintiff.

Summary judgment pursuant to Fed.R.Civ.P. 56 is appropriate where "there is no genuine issue as to any material fact" and "the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265, 274 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Windon Third Oil and Gas v. Federal Deposit Insurance Corporation,* 805 F.2d 342, 345 (10th Cir.1986), *cert. den.* 480 U.S. 947, 107 S.Ct. 1605, 94 L.Ed.2d 791 (1987). In *Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552, it is stated:

"[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."

A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of his pleadings, but must affirmatively prove specific facts showing there is a genuine issue of material fact for trial. In *Anderson v. Liberty Lobby, Inc.,* the Court stated:

The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

477 U.S. at 252, 106 S.Ct. at 2512. The Tenth Circuit requires "more than pure speculation to defeat a motion for summary judgment" under the standards set by *Celotex* and *Anderson. Setliff v. Memorial Hospital*

*of Sheridan County,* 850 F.2d 1384, 1393 (10th Cir.1988).

### A. *Engaged in Commerce*

The Defendant argues first that it is not engaged in commerce as defined by the FLSA and thus is not covered under the statute. In making this argument, Defendant concentrates on the activities of the employees and points to their lack of connection with interstate commerce.

The FLSA regulates compensation for employees who work over forty hours per week if such employees are employed by an enterprise engaged in commerce. The statute provides:

> no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is *employed in an enterprise engaged in commerce* or in the production of goods for a workweek longer than forty hours, unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

29 U.S.C. § 207(a) (emphasis added). An enterprise engaged in commerce is defined as an enterprise that "has employees engaged in commerce" and whose annual gross volume of business done is not less than $500,000. 29 U.S.C. § 203(s)(1). Finally, commerce is defined as including "transmission. . . . or communication among the several States or between any State and any place outside thereof." 29 U.S.C. § 203(b).

■ In this instance, the Defendant qualifies as an enterprise engaged in commerce. According to deposition testimony from Dan Fazzini, President of Developmental Services of Tulsa, Defendant has had a gross business on an annual basis of over $500,000 for the last five years. Pl.'s Resp. to Mot. for Summ.J., Dep. of Dan Fazzini, at p. 6. Moreover, the Defendant has set up an office in Utah as part of the same corporate entity that provides similar services. *Id.* Various employees of Defendant, including Dan Fazzini, communicate between offices and from one state to the other. *Id.* For these reasons, the Court finds that Defendant is engaged in commerce for the purposes of the FLSA.

### B. *Companionship Exemption*

■ Defendant argues that its employees provide "companionship services," thus fitting under the companionship exemption to the FLSA carved out under 29 U.S.C. § 213(a)(15). Congress created the companionship services exemption to enable guardians of the elderly and disabled to afford to have their wards cared for in their own private homes as opposed to institutionalizing them. *Lott v. Rigby,* 746 F.Supp. 1084, 1087 (N.D.Ga.1990). Under the relevant provision, an exemption from overtime compensation is granted to:

> "any employee employed on a casual basis in domestic service employment to provide babysitting services *or any employee employed in domestic service employment to provide companionship services for individuals who (because of age or infirmity) are unable to care for themselves (as such terms are defined and delimited by the regulations of the Secretary).*

29 U.S.C. § 213(a)(15) (emphasis added).

■ An employer who asserts he is exempt from the Act maintains the burden of establishing "affirmatively and clearly" that the exemption applies. *Lamon v. City of Shawnee,* 972 F.2d 1145, 1153 (10th Cir. 1992), *cert. den.,* —— U.S. ——, 113 S.Ct. 1414, 122 L.Ed.2d 785 (1993). Moreover, exceptions to the FLSA must be narrowly construed. *A.H. Phillips, Inc. v. Walling,* 324 U.S. 490, 493, 65 S.Ct. 807, 808, 89 L.Ed. 1095 (1945). As the Tenth Circuit has stated:

> An employer who asserts he is exempt from the Act has the burden of "establishing the exemption affirmatively and clearly." Exemptions must be narrowly construed and are limited to those establishments *plainly and unmistakenly within the terms and the spirit of the exemption invoked.*

*Schoenhals v. Cockrum,* 647 F.2d 1080, 1081 (10th Cir.1981) (emphasis added).

In this case, the Court must determine whether the services provided by the Defen-

dant are encompassed in the exemption as it relates to companionship services. The regulations from the Secretary provide the most guidance to the Court in determining the scope of the companionship exemption, further defining the terms, "companionship" and "domestic service employment" as used in 29 U.S.C. § 213(a)(15).

According to the regulations, companionship is defined in the following manner.

> [T]he term companionship services shall mean those services which provide fellowship, care, and protection for a person, who, because of advanced age or mental infirmity, cannot care for his or her own needs. Such services may include household work related to the care of the … infirm person such as meal preparation, bed making, washing of clothes, and other similar services.

29 C.F.R. § 552.6. Under the facts agreed to by the parties, it is clear that the Plaintiff was employed to provide fellowship and protection for individuals of advanced age and physical and mental infirmities. Therefore, this requirement of the exemption has been satisfied.

■ The regulations also contain two exceptions for the companionship services exemption: (1) general household services exceeding twenty percent of the total weekly hours worked; and (2) services performed by trained personnel, "such as a registered nurse or practical nurse." 29 C.F.R. 552.6; *Toth v. Green River Regional Mental Health/Mental Retardation Board, Inc.,* 753 F.Supp. 216, 217 (W.D.Ky.1989), *aff'd,* 985 F.2d 560 (6th Cir.1993). When these exceptions apply, the exemption for companionship services cannot be used, and the general FLSA overtime rules govern. However, Plaintiff raises neither of these exceptions to the general exemption, and it would be inappropriate to consider them here.[1]

Plaintiff concentrates on the term "domestic service employment" to rebut Defendant's claim of exemption. Specifically, Plaintiff claims that he was not employed in the private homes of those for whom he worked. In defining "domestic service employment," 29 C.F.R. § 552.3 states in pertinent part:

> [T]he term "domestic service employment" refers to services of a household nature performed by an employee in or about a private home (permanent or temporary) of the person by whom he or she is employed.

Plaintiff seeks to avoid the exemption by claiming that he did not work at a private home but rather at Defendant's place of business.

According to the legislative history, a private home is understood to be a fixed abode of the individual or family that is maintained by the individual or family in an apartment, house, or hotel. H.R.Rep. No. 913, 93rd Cong., 2d Sess., as quoted in *Lott v. Rigby,* 746 F.Supp. 1084, 1087 (N.D.Ga.1990). The House Report language states:

> The domestic service must be performed in a private home which is a fixed place of abode of the individual or family. A separate and distinct dwelling maintained by the individual or family in an apartment house or hotel may constitute a private home. However, a dwelling house used primarily as a boarding or lodging house for the purpose of supplying such services to the public, as a business enterprise, is not a private home.

H.R.Rep. 913, 93rd Cong., 2nd Sess., 1974 WL 11448 at p. 74.

■ Plaintiff successfully has demonstrated that the Defendant is not entitled to the exemption, because he did not work in the private homes of Defendant's clients. Although the homes at issue are the sole dwelling places of the clients, an institution is also the sole dwelling place of an institutionalized patient. Certainly, the companionship ex-

---

1. The closest Plaintiff comes to making such a claim is to include a sentence in its statement of material facts in dispute that he performed services that required certification after training from the state of Oklahoma. However, the only evidence presented by the Plaintiff in this regard indicates that employees had simply to attend a particular class as required by the state. No evidence has been presented which suggests that the training in any way approximates that required for a registered or practical nurse. Therefore, the trained personnel exception to the companionship exemption would not be applicable. *See Toth,* 753 F.Supp. 216, 217–218 (W.D.Ky.1989).

emption could not be construed to apply to employees who assist institutionalized patients. Therefore, the Court must closely examine the living arrangement to determine whether the residences where Plaintiff works should be characterized as "private homes."

Many factors distinguish the homes leased by these clients from the private homes contemplated by the statute. See Pl.'s Resp. to Mot. for Summ.J., Dep. of Fazzini. Defendant acquires the residences for the clients as well as the furniture for the residences. Defendant maintains a set of keys to the residences. Defendant makes decisions as to the number of people who live in the homes, often placing two or three people together in a residence. The Defendant retains substantial authority in determining the composition of homes. The clients who reside together are unrelated and are grouped together for purposes of treatment and training. Although the clients are signatories on the leases, the Defendant also signs the leases in many situations. The clients do not pay the rent to the landlord. Instead, almost all of the money is paid directly by the state to the Defendant. In turn, those sums are paid to the landlord.

Furthermore, the language of the House Report states that the dwelling space should be maintained by the inhabitants in order to be a private home. Although the clients participate in the upkeep of the home, the Defendant is ultimately responsible for maintenance of the residence. The job description of an HTS Supervisor ("HTSS") provides that employees of the Defendant should "[a]ssist the client in maintaining the client's residence in a neat and healthy condition. If the client is not capable of or willing to do so for themselves, the HTSS must do it for them." Resp. to Mot. for Summ.J., Job Description.

Moreover, the legislative intent indicates that lodging houses that act as business enterprises should not be construed as private homes. The Defendant is in the business not only of providing companionship but also of facilitating and providing lodging to its clients. The Defendant financially maintains the residences, receiving about 95 percent of the money it takes to fund each home from

the state. Pl.'s Resp., Dep. of Fazzini, at p. 28. Moreover, the Defendant is the payee, in many instances, for the public assistance checks sent to clients. When a client selects the Defendant to assist him or her, the client knows that the Defendant will make significant decisions about where, how, and with whom the client will reside.

In light of these factors, this Court determines that the residences at issue in this case are more closely analogous to state-maintained facilities than to private homes. Although the arrangement employed by Defendant may be much more preferred by clients and their families than institutionalization, these residences are not the same as private homes with respect to the objectives of the companionship exemption.

This conclusion does not contradict the result reached by the Ninth Circuit in *McCune v. Oregon Senior Services Div.*, 894 F.2d 1107 (9th Cir.1990). There, the appellants were full-time, live-in attendants for elderly and infirm individuals. In *McCune,* the court found the appellee, the Oregon Senior Services Division, exempt from the FLSA in light of the companionship services they provided. Nonetheless, the Ninth Circuit did not appear to be dealing with residences where as many as three clients live together. Thus, the two cases may be distinguished from each other.

In *McCune,* the court voiced strong policy reasons for applying the exemptions to companions, stating that the lower cost created by the exemption allowed more elderly and infirm individuals to obtain critical services and avoid the alternative of institutionalization. However, the Defendant operates homes in which groups of three mentally handicapped people live together. By avoiding the application of the FLSA, there is no added benefit of keeping the clients in their own private homes, since the clients already live in a collective environment that is maintained largely by the Defendant, a corporate entity, with significant support from the state. In addition, the collective environment creates economies of scale that reduce the expense of individualized, continued, in-home assistance. Therefore, the cost-reduction function served by the companionship

exemption does not present itself in this context with the same level of urgency.

In light of the close examination of Plaintiff's work environment, this court finds that the companionship exemption is not applicable in the case at bar. This determination is consistent with the Tenth Circuit's holding in *Schoenhals* that exemptions to the FLSA should be narrowly construed and fit unmistakenly within the *terms and spirit* of the exemption. Therefore, this court finds, much like the conclusion reached in *Lott v. Rigby*, 746 F.Supp. 1084, 1087 (N.D.Ga.1990), that the residences maintained by the Defendant are not private homes for the purposes of applying the exemption.

### C. *Willfulness*

 The Defendant seeks to limit its liability by urging this Court to accept a two-year statute of limitations. The FLSA provides a two-year statute of limitations for non-willful violations and a three-year period for willful violations. 29 U.S.C. § 255. The year of employment in question involves the period from November 1991 to May 5, 1992, since the Complaint was filed on May 5, 1994. According to the Defendant, it sought and received advice from the U.S. Department of Labor indicating that Defendant's employees provided companionship services as defined by the FLSA and thus was excluded from the overtime compensation requirement. Therefore, Defendant argues it was not in willful violation. On the other hand, Plaintiff points to a published decision by the Oklahoma Court of Appeals in October of 1991 which required Defendant to pay overtime compensation in a case filed by an employee who had a job similar to the Plaintiff's. *Secrist v. Developmental Services of Tulsa*, 819 P.2d 718 (Okla.Ct.App.1991).[2] Since Plaintiff did not go to work for Defendant until after *Secrist* was handed down, Plaintiff argues that the failure to pay overtime must have been willful. Although the facts and most of the issues in *Secrist* were different, the case did involve overtime for an apparently similarly-situated employee. Given this factual

dispute over whether or not the failure to pay was willful, the Court is not prepared to grant summary judgment on this question.

### III. Conclusion

For the reasons discussed above, this Court denies the Defendant's Motion for Summary Judgment and holds that the FLSA's overtime provisions are applicable in this action.

ORDERED.

---

**2.** While the Defendant had to pay overtime as a result of *Secrist,* the court did not address the applicability of the companionship exemption in that case.