894 F.2d 1107
 29 Wage & Hour Cas. (BN 1187, 114 Lab.Cas. P 35,305
 Jay McCUNE; Alden Carlson; Robert Knee; Ralph L. Shafer;
Steven Eldon Jones; Glen Kimble, et al.,
Plaintiffs-Appellants,
v.
OREGON SENIOR SERVICES DIVISION; Richard Ladd; Dexter
Henderson; Oregon Adult & Family Services
Division; Keith Putman; Oregon
Department of Human Resources;
Leo Hegstrom, Defendants-Appellees.
 No. 88-3843.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Sept. 13, 1989.
Decided Jan. 26, 1990.
 
 Gayle L. Troutwine, Williams, Troutwine & Bowersox, P.C., Portland, Or., for plaintiffs-apellants.
 Christine Chute, Asst. Atty. Gen., Salem, Or., for defendants-appellees.
 In the United States District Court for the District of Oregon.
 Before PREGERSON, TROTT and RYMER, Circuit Judges.
 TROTT, Circuit Judge:
 
 SUMMARY
 
 1
 Appellants are live-in attendants for elderly and disabled persons. Clients pay for their services with federal and state assistance disbursed by appellees. This action was brought by appellants pursuant to the Fair Labor Standards Act ("FLSA") as amended, 29 U.S.C. Sec. 201, et seq. (1982 & Supp.1989), seeking minimum wage for all hours worked. The district court granted appellees' motion for summary judgment, 643 F.Supp. 1444 (1986), finding that services performed by appellants were specifically exempted from the Act. We affirm.
 
 BACKGROUND
 
 2
 Appellants are full-time, live-in attendants for elderly and infirm individuals unable to care for themselves. Appellants' clients are recipients of federal and state funds under programs administered by appellees, various agencies, and administrators of the State of Oregon. Appellants provide a wide variety of daily services to their clients, including cleaning, cooking, and hygiene and medical care. Such services fall within the general "domestic service" portion of the FLSA, and appellants would thus be entitled to minimum wage protection unless specifically excluded by another of its provisions.
 
 
 3
 The district court held that appellants performed "companionship services" within the meaning of the FLSA exemption found at 29 U.S.C. Sec. 213(a)(15). The court held accordingly that appellants were excluded from minimum wage protection unless they qualified as "trained personnel" or provided "general household work," the only two exceptions from the "companionship services" exclusion. The district court then held that appellants' training as certified nursing assistants (CNAs) did not qualify them as "trained personnel," and that household work related to the care of the disabled individuals would not be considered "general household work."
 
 
 4
 Finally, the district court held that, notwithstanding its general analysis, any particular appellant who could prove coverage under FLSA minimum wage protection could recover payment for (1) those hours of work that appellees had authorized, and (2) those hours worked in excess of authorization of which appellees were aware. The court further held, however, that although defendants and the disabled recipients were joint employers, knowledge of hours worked would not be imputed from the disabled recipients to the defendants.
 
 STANDARD OF REVIEW
 
 5
 In Walling v. General Indus. Co., 330 U.S. 545, 67 S.Ct. 883, 91 L.Ed. 1088 (1947), the Court held that questions regarding an employee's inclusion within one of the exemptions of the FLSA are questions of fact and should not be overturned unless clearly erroneous. We followed this standard in Hoyt v. General Insurance Company of America, 249 F.2d 589, 590 (9th Cir.1957), and Wainscoat v. Reynolds Electrical & Engineering Co., 471 F.2d 1157, 1161-62 (9th Cir.1973). In the instant case, however, the district court treated the question as one that did not involve a genuine issue of material fact and granted summary judgment as a matter of law in favor of the appellees. We review a grant of summary judgment based upon statutory construction de novo. Turner v. McMahon, 830 F.2d 1003 (9th Cir.1987), cert. denied, --- U.S. ----, 109 S.Ct. 59, 102 L.Ed.2d 37 (1988).
 
 ANALYSIS
 
 6
 * The Companionship Service Exemption
 
 
 7
 Appellants argue that the district court erred in holding that the companionship services exemption applied to them. Appellants, (quoting 29 C.F.R. Sec. 552.3), argue they are domestic service employees as the Secretary defines that term because their jobs include acting as:
 
 
 8
 cooks, waiters, butlers, valets, maids, housekeepers, governesses, nurses, janitors, laundresses, footmen, grooms, and chauffeurs of automobiles.
 
 
 9
 They correctly point out that all exceptions to the FLSA must be narrowly construed. A.H. Phillips, Inc. v. Walling, 324 U.S. 490, (1945). Nevertheless, the legislative history of the FLSA and the statutory language of the exemption demonstrate that Congress clearly recognized that companions would be an exempt sub-category of domestic service workers. The language of the FLSA exempts:
 
 
 10
 (15) any employee employed on a casual basis in domestic service employment to provide babysitting services or any employee employed in domestic service employment to provide companionship services for individuals who (because of age or infirmity) are unable to care for themselves (as such terms are defined and delimited by regulations of the Secretary).
 
 
 11
 29 U.S.C. Sec. 213(a)(15); see also H.R.Rep. No. 913, 93d Cong., 2d Sess. 120, reprinted in 1974 U.S.Code Cong. & Admin.News 2811, 2821, 2842 (recognizing companions as an exception to FLSA's coverage of domestic workers) (hereinafter H.R.Rep. No. 913). The Secretary has determined that companionship services are
 
 
 12
 those services which provide fellowship, care, and protection for a person who, because of advanced age or physical or mental infirmity, cannot care for his or her own needs.... The term "companionship services" does not include services relating to the care and protection of the aged or infirm which require and are performed by trained personnel, such as a registered or practical nurse. While such trained personnel do not qualify as companions, this fact does not remove them from the category of covered domestic service employees when employed in or about a private household.
 
 
 13
 29 C.F.R. Sec. 552.6.
 
 
 14
 Appellants urge us to ignore the Secretary's definition because of what they perceive as an inequitable result that follows from focusing on the recipients of these services as the determinative factor in applying the exception. They point out that individuals providing services to the elderly and infirm have a much less attractive job than those domestic service workers providing services to other clients. We are not without sympathy for this argument. Appellants provide a wide variety of critical services under very unattractive conditions. They live with their clients at a near poverty level providing around-the-clock care. We cannot say, however, that the Secretary's definition of "companionship services" is unreasonable in light of his congressional mandate. Where Congress has delegated authority to an agency to elucidate a specific provision of a statute by regulation, such regulations are to be given controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute. Chevron U.S.A. Inc. v. Natural Resources Defense Council, 467 U.S. 837, 843-44, 104 S.Ct. 2778, 2781-82, 81 L.Ed.2d 694 (1984). As long as the agency's construction is reasonable, it must be upheld. See Connecticut Dept. of Income Maintenance v. Heckler, 471 U.S. 524, 532, 105 S.Ct. 2210, 2214, 85 L.Ed.2d 577 (1985). While we do not find fault with the strong policy arguments made by appellants, we note that there are also sound policy reasons for applying the exemption to companions as defined by the Secretary. We are informed that these critical services reach more elderly or infirm individuals than they otherwise would precisely because the care-providers are exempt from the FLSA. We also note that many private individuals, who do not benefit from federal and state assistance, may also be forced to forego the option of receiving these services in their homes if the cost of the services increases. The only alternative for these individuals may be institutionalization.
 
 
 15
 This argument is not properly addressed to the judiciary. Appellants must petition the Secretary or Congress for the remedy they seek.
 
 II
 The "Casual" Limitation
 
 16
 The FLSA exception under scrutiny applies to "any employee employed on a casual basis in domestic service employment to provide baby-sitting services or any employee employed in domestic service employment to provide companionship services...." 29 U.S.C. Sec. 213(a)(15) (emphasis added). Appellants argue that the "casual" qualification was intended to apply to companions as well as baby-sitters. The Secretary's regulation defining companionship services provides, "[T]he 'casual' limitation does not apply to companionship services." 29 C.F.R. Sec. 552.106. As noted above, we must uphold the Secretary's interpretation of a statute he is charged with administering if that interpretation is reasonable. Heckler, 471 U.S. at 533, 105 S.Ct. at 2215. In light of the plain language of the statute, we cannot say that this is an unreasonable interpretation.
 
 
 17
 Appellants point to legislative history in which the committee stated that one reason the exemption applied to babysitters and companions was that these workers "are not regular breadwinners or responsible for their families' support." H.R.Rep. No. 913, 1974 U.S.Code Cong. & Admin.News at 2845. Appellants argue that, while they are companions, they are also breadwinners, and thus Congress did not intend that the provision apply to them.
 
 
 18
 However, the statements included in the legislative history are merely policy justifications for the exception. The plain language of the statute does not make this "breadwinner/nonbreadwinner" distinction, and we decline to fashion one. The proposal for such a change to the FLSA is more appropriately addressed to the legislative branch.
 
 III
 Trained Personnel/General Household Work
 
 19
 The district court found that plaintiffs would enjoy minimum wage protection if they fit within the "trained personnel" or "general household work" exceptions. 29 C.F.R. Sec. 552.6.
 
 
 20
 The court found, however, that appellants who were CNAs did not fit within the trained personnel exemption. The court based this finding upon the fact that CNAs, unlike registered nurses and licensed practical nurses, receive only sixty hours of formal medical training. Appellants argued that those CNAs who were trained by their clients' doctors to administer medications and provide other services generally required to be performed by trained personnel should be paid as trained personnel. The district court, however, rejected this argument as Oregon law requires these services to be provided by a licensed nurse. The court stated, "If McCune is forbidden from performing these additional tasks, it would be improper for me to reward him for doing so, regardless of his good intentions. The exception applies to services 'which require and are performed by trained personnel.' " The court further noted that recognizing on-the-job training would prove an "administrative nightmare" for the state since each worker would constantly have to be reevaluated. This holding is consistent with the FLSA's legislative history which provides:
 
 
 21
 [T]he exemption reflects the intent of the committee to exclude from coverage ... companions for individuals who are unable because of age and infirmity to care for themselves. But it is not intended that trained personnel such as nurses, whether registered or practical, shall be excluded.
 
 
 22
 H.R.Rep. No. 913, 1974 U.S.Code Cong. & Admin.News at 2845.
 
 
 23
 As to the issue of household work, the relevant regulation provides:
 
 
 24
 [Companionship] services may include household work related to the care of the aged or infirm person such as meal preparation, bed making, washing of clothes, and other similar services. They may also include the performance of general household work: Provided, however, That such work is incidental, i.e., does not exceed 20 percent of the total weekly hours worked.
 
 
 25
 29 C.F.R. Sec. 552.6.
 
 
 26
 The district court followed the federal regulation, holding that any household work related to the care of the individual would not be counted towards the twenty percent threshold. Appellants argue that it is unreasonable to distinguish between cleaning related to the care of the individual and general household work, and that the Secretary's interpretation should not apply. Once again, the Secretary's interpretation of the law is reasonable. The legislative history of the FLSA states:
 
 
 27
 The fact that persons performing casual services as baby-sitters or services as companions do some incident of household work does not keep them from being casual baby-sitters or companions for purposes of this exclusion.
 
 
 28
 H.R.Rep. No. 913, 1974 U.S.Code Cong. and Ad.News at 2845.
 
 
 29
 In light of this history, it is impossible to find unreasonable the Secretary's interpretation requiring household work related to the care of the individual to be excluded from the FLSA's coverage.
 
 IV
 Knowledge of Hours Worked
 
 30
 Appellants work under individual contracts with the state. The district court correctly found that the workers must be compensated for all hours that the state suffers or permits to be worked. 29 C.F.R. Secs. 778.223, 778.11; see also 29 C.F.R. Sec. 552.102. They are not entitled to, nor are they seeking overtime pay.
 
 
 31
 The district court found that knowledge of the hours appellants worked would be imputed from state caseworkers to the state agencies under a general agency theory. While the district court correctly found that the state and care recipients were joint employers based upon Bonnette v. California Health & Welfare Agency, 704 F.2d 1465 (9th Cir.1981), it refused to impute knowledge of hours worked from the individual recipients to the state. While Bonnette holds that the state and the recipients can be joint employers, it does not reach the issue of whether the recipients' knowledge should be imputed to the state.
 
 
 32
 The disabled individuals are the recipients of the state and federal aid under this program. Allowing them to control the hours worked and then forcing the state to pay for the services performed would remove much of the control of the program from the state agencies charged with its administration. This would not be appropriate.
 
 The district court's judgment is
 
 33
 AFFIRMED.
 
 PREGERSON, Circuit Judge, dissenting:
 
 34
 I dissent. The district court failed to recognize that attendants for elderly and disabled persons may be trained, full-time personnel protected by minimum wage guarantees.
 
 
 35
 1. Minimum Wage Protection of Domestic Workers
 
 
 36
 In 1974, Congress extended minimum wage coverage to domestic service workers in response to growing concerns for their plight. Congress noted that domestic service work "is not only low-wage work, but is highly irregular, [with] few if any non-wage benefits, and is largely unprotected by unions or by any Federal or State labor standards." S.Rep. No. 690, 93d Cong., 2d Sess. 8, reprinted in Senate Subcommittee on Labor of the Committee on Labor and Public Welfare, 94th Cong.2d Sess., Legislative History of the Fair Labor Standards Amendments of 1974, at 1522 (1976) [hereinafter Legislative History]; H.R.Rep. No. 913, 93d Cong., 2d Sess. 33, reprinted in Legislative History, supra at 2110. Congress viewed the extension of minimum wage protection to domestic workers as a small step toward providing these workers with the opportunity to maintain a "minimum standard of living necessary for health, efficiency, and general well-being." H.R.Rep. No. 913, 93d Cong., 2d Sess. 33, reprinted in Legislative History, supra at 2111.
 
 
 37
 To allay concerns that "unlimited" minimum wage protection for domestic workers would wreak economic havoc, sponsors of the measure agreed to exempt from minimum wage coverage babysitters and companions. By the terms "babysitter" and "companion," the sponsors meant persons who did not provide medical care or perform substantial household work.
 
 
 38
 We use [the term companion to mean] people [who] are in a household not to do household work but are there, first, as babysitters. I think we all have the full meaning in mind of what a babysitter is there for--to watch the youngsters. "Companion" as we mean it, is in the same role--to be there and to watch an older person, in a sense.
 
 
 39
 Legislative History, supra at 963, 119 Cong.Rec. 24773, 24801 (1973) (Statement of Sen. Williams, Chairman of the Senate Subcommittee on Labor and the Senate floor manager of the 1974 Amendment). Congress was specific in characterizing babysitters and companions as people who were not "regular bread-winners or responsible for their families' support." Senate Subcommittee Report, supra at 8.
 
 
 40
 As pointed out by the majority opinion, appellants are full-time, live-in attendants who provide a wide variety of daily services to their clients, including cleaning, cooking, and hygiene and medical care. These services are obviously not what Congress intended to include in the concept of "babysitting" and "companionship." The district court nevertheless held that appellants performed "companionship services" within the meaning of the Fair Labor Standards Act (FLSA) exemption. 29 U.S.C. Sec. 213(a)(15).
 
 
 41
 2. Exceptions to the companionship exemption
 
 
 42
 The district court partly justified its refusal to extend minimum wage coverage to appellants by concluding that they were neither "trained personnel" nor "general household" workers. These two categories of workers comprise "exceptions to the exemption" from minimum wage protection. In other words, if a person, otherwise characterized as a "companion," has adequate training, or does general household work, he or she is entitled to receive minimum wage protection under the FLSA.
 
 
 43
 a. Trained Personnel
 
 
 44
 A Department of Labor regulation provides that the "[t]erm 'companionship services' does not include services relating to the care and protection of the aged or infirm ... performed by trained personnel, such as a registered [RN] or practical [LPN] nurse." 29 C.F.R. Sec. 552.6 (1989). Many of the appellants are Certified Nursing Assistants (CNAs), medical personnel who have undergone sixty hours of medical training in a curriculum which the district court concedes to be "an ambitious one [including] many diverse subjects." But the district court nonetheless brushed aside this training and read the regulation's example of trained personnel ("such as a registered or practical nurse") as a definition of the training necessary to qualify an in-home medical worker for this exception. Because a CNA does not receive training as extensive as that afforded an RN or LPN, the district court disregarded altogether that training for purposes of minimum wage protection.
 
 
 45
 Exemptions to the FLSA are to be narrowly construed in order to give full effect to the Act's purpose. A.H. Phillips, Inc. v. Walling, 324 U.S. 490, 493, 65 S.Ct. 807, 808, 89 L.Ed. 1095 (1945) (quoting the President's May 24, 1934 message to Congress on the purpose of the FLSA as the extension " 'of social progress' by 'insuring to all our able-bodied working men and women a fair day's pay for a fair day's work.' ") The logical extension of this principle is that exceptions to the exemptions should be broadly construed; such a construction, consistent with Congressional intent, broadens, not narrows, the number of workers eligible for protection under the FLSA. The argument that CNA attendants are not trained for the purposes of minimum wage coverage smacks of elitism. This conclusion is by no means dictated by the language of the regulation. Additionally, such a narrow view ignores the rapidly changing realities of the contemporary health care industry. In the world of escalating medical costs, persons who are unable to afford extended hospital care and nursing home care must rely on practically trained medical personnel to minister to their needs at home. The district court ruling denies a minimum wage to these critically important medical personnel.
 
 
 46
 b. General Household Work
 
 
 47
 The district court held that appellants are "general household workers" entitled to minimum wage coverage only if more than 20% of the work they perform is household work and the work is unrelated to their care for the client. This conclusion is based upon a Labor Department regulation which attempts to describe the relationship between companionship services and household duties:
 
 
 48
 [Companionship] services may include household work related to the care of the aged or infirm person such as a meal preparation, bed making, washing of clothes, and other similar services. They may also include the performance of general household work: Provided, however, That such work is incidental, i.e., does not exceed 20 percent of the total weekly hours worked.
 
 29 C.F.R. Sec. 552.6 (1989)
 
 49
 Congress viewed the scope of this "incidental work" (performance of which would not operate to qualify the companionship service for minimum wage protection) in a very limited way. If the worker's actual purpose was to function as a baby sitter or companion, "making lunch or throwing a diaper into the washing machine" or "[a]nything which is purely incidental would not change the category of the person being there in the household." 119 Cong.Rec. 24773, 24801 (1973). But services performed by appellants go far beyond these incidental chores.
 
 
 50
 The Department of Labor regulation does focus on the relation of household work to companionship services and the percentage of household work relative to overall duties to determine whether an in-home worker should receive the minimum wage.[1] Nevertheless, this regulation should not be read to exclude a class of workers from minimum wage protection simply because some of the work performed may fall into an exempted category. A general rule of FLSA construction holds that "an employee's performance of both exempt and nonexempt activities during the same work week defeats any exemption that would otherwise apply.... In any week that any particular employee does some nonexempt work he is covered fully, not pro-rata." Skipper v. Superior Dairies, Inc., 512 F.2d 409, 411 (5th Cir.1975) (quoting Hodgson v. Wittenburg, 464 F.2d 1219, 1221 (5th Cir.1972), and Brennan v. Six Flags Over Georgia, Ltd., 474 F.2d 18, 19 (5th Cir.1973)).
 
 
 51
 There is something to be said for the majority's position that it is not the business of this court to choose among the strong policy arguments for and against minimum wage protection for these in-home workers. It is precisely our business, however, to rule on proper application of the regulation to the facts at hand. I do not propose challenging the agency's interpretation of its mandate when it promulgated section 552.6. Rather, I believe the district court improperly applied the section's definitions to appellants.
 
 
 52
 The babysitter/companion exemption is meant to apply to part-time workers not involved in hard domestic labor who do not look to their work as a principle means of support. The regulation should not be read to exclude precisely those persons Congress meant to protect with the 1974 FLSA amendments. This is, however, what the district court did when it categorized workers without looking to the actual nature of the work they perform. Though simple meal preparation might be "incidental," what of specially prepared nutritional diets (critical to the health of many elderly and disabled persons) and the administration of medication? Though simple laundry work might be "incidental," what of bed-pan duty, catheterization, and soiled linens and garments for bed-ridden invalids? These duties are certainly related to the care of the attendant's client, but are by no means incidental. The work is hard and back-breaking, requiring patience and stamina, and is critical to adequate medical care of many elderly and disabled persons who live at home.
 
 3. Conclusion
 
 53
 I would reverse the district court's grant of summary judgment. The appellants, to the extent that they provide any substantial domestic service or receive any significant formal training to provide such services, are not companions within the meaning of 29 U.S.C. Sec. 213(a)(15), and are thus entitled to receive the minimum wage for their work. I would remand the case to the district court to determine which of the plaintiff/appellants, because of their job functions and training, are entitled to FLSA minimum wage coverage.
 
 
 
 [1]
 "[H]ousehold work related to the care ... [p]rovided ... such work is incidental." 29 C.F.R. 552.6 (1989) (emphasis added and deleted)