COFFEY, Circuit Judge.
Carol Cox appeals from the entry of summary judgment granted in favor of her former employer, Acme Health Services, Inc. (“Acme”), a home health agency in Indianapolis, Indiana. In March of 1993, Cox, who worked for Acme from August, 1990 through February, 1993 as a home health aide, brought suit against Acme seeking unpaid overtime compensation, liquidated damages, as well as costs and attorneys’ fees, claiming that Acme wrongfully refused to pay her overtime wages for the hours she worked in excess of forty per week in violation of § 7(a)(1) of the Fair Labor Standards Act (“FLSA”), 29 U.S.C. § 207(a)(1). The district court granted Acme’s motion for summary judgment, finding that the services Cox performed were “companionship services” within the meaning of an exemption to the FLSA’s general overtime pay requirements. See id. at § 213(a)(15); 29 C.F.R. § 552.6 (1994). We affirm.
I. BACKGROUND
A. The Statutory and Regulatory Framework
The FLSA requires employers to pay domestic service employees overtime pay at the rate of one and one-half times the regular wage for hours worked in excess of forty in any single work week. 29 U.S.C. § 207(a)(1).[1] However, this overtime pay requirement does not apply to an “employee employed in domestic service employment to provide companionship services for individuals who (because of age or infirmity) are unable to care for themselves (as such terms are defined and delimited by the regulations of the Secretary [of Labor]).” Id. at § 213(a)(15). The regulation promulgated pursuant to this section defines the term “companionship services” as:
those services which provide fellowship, care, and protection for a person who, because of advanced age or physical or mental infirmity, cannot care for his or her own needs. Such services may include household work related to the care of the aged or infirm person such as meal preparation, bed making, washing of clothes, and other similar services. They may also include the performance of general household work: Provided, however, That such work is incidental, i.e., does not exceed 20 percent of the total weekly hours worked. The term “companionship services” does not include services relating to the care and protection of the aged or infirm which require and are performed by trained personnel, such as a registered or practical nurse. While such trained personnel do not qualify as companions, this fact does not remove them from the category of covered domestic service employees when employed in or about a private household.
*1306 29 C.F.R. § 552.6 (1994) (emphasis in original).
Within this federal statutory and regulatory framework, we must analyze the role of a home health aide working for a home health agency in the State of Indiana. The nature of a home health aide’s training and duties lies at the crux of this dispute. See Alex v. Chicago, 29 F.3d 1235, 1237 (7th Cir.), cert. denied, — U.S. -, 115 S.Ct. 665, 130 L.Ed.2d 599 (1994) (nature of training and duties of paramedics crucial to the determination of exemption from overtime pay requirements for “fire protection activities”). Home health aides provide basic personal health care services to the aged or infirm who can no longer care for themselves, and, under the direction of registered nurses, assist other medical care providers, including therapists, in carrying out various assignments related to patient care:
The home health aide shall be assigned to a particular patient by a registered nurse. Written instructions for patient care shall be prepared by a registered nurse or therapist as appropriate. Duties may include the performance of simple procedures as an extension of therapy services or nursing service, personal care, ambulation and exercise, household services essential to health care at home, assistance with medications that are ordinarily self-administered, reporting changes in the patient’s conditions and needs, and completing appropriate records.
410 Ind.Admin.Code § 17 — 6—l(i).
Although home health aides work under the close supervision of registered nurses, federal and state regulations require home health aides to have successfully completed seventy-five hours of general training,[2] including sixteen hours of practical training in the following' areas:
(1) Communication skills.
(2) Observation, reporting, and documentation of patient status and the care or service furnished.
(3) Reading and recording temperature, pulse, and respiration.
(4) Basie infection control procedures.
(5) Basic elements of body functioning and changes in body function that must be reported to an aide’s supervisor.
(6) Maintenance of a clean, safe, and healthy environment.
(7) Recognizing emergencies and knowledge of emergency procedures.
(8) The physical, emotional, and developmental needs of and ways to work with the populations served by the home health agency, including the need for respect for the patient, the patient’s privacy, and the patient’s property.
(9) Appropriate and safe techniques in personal hygiene and grooming that include the following:
(A) Bed bath, sponge, tub, or shower
bath.
(B) Shampoo, sink, tub, or bed.
(C) Nail and skin care.
(D) Oral hygiene.
(E) Toileting and elimination.
(10) Safe transfer techniques and ambulation.
(11) Normal range of motion and positioning.
(12) Adequate nutrition and food intake.
(13) Any other task that the home health agency may choose to have the home health aide perform.
410 Ind.Admin.Code § 17-6-l(e); 42 C.F.R. § 484.36(a) (1994). Home health aides must also receive at least twelve hours of in-service training each year. 410 Ind.Admin.Code § 17 — 6—1(h)(1)(B); 42 C.F.R. § 484.36. Federal and state regulations require a registered nurse to conduct home health aide training and testing to ensure each home health aide’s competency in the specified skill areas at least once a year. 410 Ind.Admin.Code § 17 — 6—1(g); 42 C.F.R. § 484.36(a)(2)(ii) (1994); see also 410 Ind.Ad *1307 min.Code § 17-6 — 1(h) (“An individual may furnish home health aide services on behalf of a home health aide agency only after that individual has successfully completed state mandated training and a competency evaluation program”).[3]
B. Factual and Procedural Background
Carol Cox was employed by Acme as a certified nursing assistant (“CNA”) and home health aide from August, 1990, through February, 1993, when she voluntarily terminated her employment for reasons undisclosed in the record. In 1985, Cox trained for and was certified as a CNA by the State of Indiana. For this certification, Cox completed a total of 105 hours of classroom instruction and practical training.[4] Prior to her employment with Acme, she had also fulfilled the formal state mandated training for home health aides and had passed the competency evaluations in each required skill area.[5] Cox worked for approximately two years as a CNA and home health aide for other Indiana home health agencies prior to her employment with Acme.
At the beginning of her employment with Acme, Cox worked exclusively in nursing home facilities as a CNA. Later, at her request, Cox was assigned to private home duty as a home health aide. At each of her patients’ homes, and as required by state and federal regulations, Cox worked under the direction of a registered nurse and performed duties which all fell within the range of duties set forth in Acme’s formal job description for home health aides, which included, among other things, performing patient care as assigned by a registered nurse or therapist, assisting the patient with personal care, assisting the patient with rehabilitative activities, assisting the patient with taking self-administered medications, and assisting the registered nurse with specific assigned procedures, including the taking of vital signs and skin care.[6]
Between August, 1990, and December, 1992, Cox received an hourly wage ranging from $7.00 to $8.50 per hour, depending upon the assignment. Although she was regularly employed in excess of forty hours per work week, she did not receive overtime compensation. On February 26 and 27, 1993, Cox failed to report to work and on February 29, 1993, Cox called Acme’s offices and stated that she was resigning from her position.
Previously, in 1989, an auditor from the Wage and Hour Division of the Department of Labor informed Acme that home health aides fell within the “companionship services” exemption to the FLSA’s general overtime pay requirements. During a subsequent audit in December, 1992, a representative from the Wage and Hour Division advised Acme’s president that the rules pertaining to the “companionship services” exemption under the FLSA had changed and recommended payment of overtime compensation (at the rate of one and one-half times the regular wage) to home health aides. Based on the advice of the Wage and Hour Division auditor, Acme began compensating home health aides for overtime in December, 1992.
On March 18, 1993, Cox filed suit under § 16(b) of the FLSA, 29 U.S.C. § 216(b), *1308 alleging that Acme violated § 7(a)(1) of the FLSA, id. at § 207(a)(1), when it refused to pay overtime wages for the hours she worked in excess of forty hours in any given work period. Cox sought unpaid overtime compensation and liquidated damages totalling $5,407.24,[7] costs and attorneys’ fees. Acme filed a motion for summary judgment, asserting that the services Cox performed as a home health aide were properly classified as “companionship services,” specifically exempted from the FLSA’s general overtime pay requirements. Id. at § 213(a)(15); 29 C.F.R. § 552.6 (1994). In opposing Acme’s motion, Cox argued that she did not provide “companionship services” as defined by 29 C.F.R. § 552.6, but that her services were “services relating to the care and protection of the aged or infirm which require and are performed by trained personnel, such as a registered or practical nurse,” id., and as such qualified her for overtime compensation. Cox maintained that her training and duties as a home health aide were akin to the training and duties of a registered or practical nurse within the meaning of the exception to the FLSA’s exemption for “companionship services.”
The district court granted Acme’s motion for summary judgment, finding that the training undertaken by a home health aide was far more limited in scope and duration than the training of the “trained personnel” referred to in the regulation, specifically, registered and practical nurses. The court concluded that the services provided by home health aides neither required nor were performed by “trained personnel,” as that term was defined in 29 C.F.R. § 552.6, and ruled that to be entitled to overtime compensation under § 552.6, “a person must have training at least relatively equivalent, in amount and type, to a registered nurse or practical nurse.” The court went on to note that home health aides work under the supervision of registered nurses, and observed that:
In short, it is clear, after examining both the home health aide’s job requirements and job duties, ... that nothing like the training required of a licensed practical nurse is necessary to competently perform the job of a home health aide.
II. DISCUSSION
A. Standard of Review
We review the district court’s decision to grant summary judgment de novo. Jackson v. Bunge Corp., 40 F.3d 239, 245 (7th Cir.1994). Summary judgment is proper only when “the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.” Fed.R.Civ.P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). In determining whether summary judgment is appropriate, we must view the evidence, and draw all reasonable inferences from the evidence, in the light most favorable to the non-moving party. Kennedy v. United States, 965 F.2d 418, 417 (7th Cir.1992); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S.Ct. 2505, 2509, 91 L.Ed.2d 202 (1986).
We have held previously that “[t]he FLSA is a remedial act and exemptions from its coverage are to be narrowly construed against employers.” Klein v. Rush-Presbyterian-St. Luke’s Medical Center, 990 F.2d 279, 282 (7th Cir.1993). An employer thus bears the burden of proving the applicability of an FLSA exemption. Alex, 29 F.3d at 1243 n. 7. Both Cox and Acme concede that Cox was a domestic service employee as defined by 29 C.F.R. § 552.3, and that she had fulfilled all of the training requirements to become a CNA and a home health aide. The parties’ positions diverge over the proper interpretation and application of the “trained personnel” exception to the exemption from the FLSA’s overtime pay requirements for “companionship services” under 29 C.F.R. § 552.6.
*1309 B. “Companionship Services” Under the FLSA
The question presented is whether Cox, while employed as a home health aide, provided mainly “companionship services” (or “companionship services” and no more than twenty percent general household services), within the meaning of 29 U.S.C. § 213(a)(15) and 29 C.F.R. § 552.6, and was thus exempt from the FLSA’s overtime pay provisions. Essentially, the question raised on appeal is whether a home health aide, who performed services requiring more training than those services delineated in the regulation’s example of “companionship services,” but whose medical training was far more basic, limited in scope and duration than the training of a practical nurse, much less a registered nurse, was entitled to overtime compensation.
Cox argues that the description of “trained personnel” contained in 29 C.F.R. § 552.6, i.e., “such as a registered or practical nurse,” provides merely an example of those “trained personnel” entitled to overtime compensation and was not intended to define the minimum training necessary for an employee to qualify for overtime pay. She contends that the Secretary’s use of the phrase “such as” to modify the examples given, left open the possibility that other trained employees would also qualify for this exception. Cox believes that her cumulative training as a CNA and home health aide was sufficient to entitle her to overtime pay under the FLSA.
Acme argues that to qualify for the “trained personnel” exception to the “companionship services” exemption, home health aides would have to receive training comparable in quality and quantity to the training received by registered or practical nurses. Acme notes that the state mandated training for home health aides — seventy-five hours of instruction, including sixteen hours of practical training — falls far short of the training undertaken by registered and practical nurses, which, in Indiana, includes two years of instruction for registered nurses and forty-four weeks of instruction for practical nurses.
The only appellate court to have addressed this issue concluded that certified nursing assistants, who received only sixty hours of formal medical training (only fifteen hours less than Cox’s seventy-five hours of home health aide training), were not “trained personnel, such as ... registered or practical nurse[s]” within the meaning of 29 C.F.R. § 552.6. McCune v. Oregon Senior Services Division, 894 F.2d 1107, 1110-11 (9th Cir.1990). In McCune, the court noted that the exception applies to services “which require and are performed by trained personnel.” Id. at 1111 (quoting 29 C.F.R. § 552.6) (emphasis added). The court found that the plaintiffs duties as a CNA, which included “cleaning, cooking, and hygiene and medical care,” id. at 1108, were not “services ... which require and are performed by trained personnel, such as a registered or practical nurse.” 29 C.F.R. § 552.6. The court rejected the plaintiffs argument that he should be entitled to overtime compensation because “[he had been] trained by [his] client’s doctors to administer medications and provide other services generally required to be performed by trained personnel.” McCune, 894 F.2d at 1111. The court observed:
[State] law requires these services to be provided by a licensed nurse_ “If’ McCune is forbidden from performing these additional tasks, it would be improper for [the court] to reward him for doing so, regardless of his good intentions.”
Id. at 1111 (quoting the district court’s order). The court also noted that eligibility for overtime compensation under the FLSA would depend on the training required for a particular position, and not on any on-the-job training actually received by an individual holding that position, because “recognizing on-the-job training would prove an ‘administrative nightmare’ for the state since each worker would constantly have to be reevaluated.” Id.[8]
We see no reason to depart from this interpretation. Cox, like the plaintiff in McCune, received only a fraction of the training received by registered or practical nurses. Cox was only required to complete a *1310 mere seventy-five hours of training to become a home health aide. In contrast, Indiana’s licensing requirements for a registered or practical nurse mandate extensive study at an accredited school of nursing. To become a registered nurse, an individual must successfully complete at least two years of academic study with instruction in areas such as physical and biological sciences, social and behavioral sciences, and nursing theory. 848 Ind.Admin.Code § 1-1-4.032. To become a licensed practical nurse, an individual must successfully complete forty-four full weeks of academic instruction, including at least 600 didactic hours and 650 clinical hours. Id. at § 1-1-4.033. These requirements for registered nurses and licensed practical nurses are obviously far more stringent than the training requirements for a home health aide, which could conceivably be completed in less than one month. The fact that Cox had also completed 105 hours of instruction and training for her CNA certification is of no consequence; her position as a home health aide did not require any formal training beyond the seventy-five hours mandated by state and federal regulations. See McCune, 894 F.2d at 1111.
To be entitled to overtime compensation under the “trained personnel” exception to the “companionship services” exemption under the FLSA, a domestic service employee must not only perform services requiring the training of a registered or practical nurse, but must in fact have obtained training comparable in scope and duration to that of a registered or practical nurse. Neither Cox nor Acme disputes that on occasion, Cox performed duties — such as changing and cleaning catheters — that are frequently performed by trained practical or registered nurses. Nonetheless, because Cox was never required to and thus had never received training comparable to that required for a practical nurse, much less a registered nurse, she was not entitled to overtime pay under the FLSA. Cox’s training as a home health aide was basic and limited to the seventy-five hours of general training required by federal and state regulations, which included training in such areas as personal hygiene, nutrition, and the measurement of vital signs. See, e.g., 410 Ind.Admin.Code § 17-6-l(e). This training falls far short of the extensive training in the physical, biological, social and behavioral sciences that registered and practical nurses receive. See, e.g., 848 Ind.Admin.Code § 1-1-4.032. Of particular significance is the fact that a home health aide must be closely supervised by a registered nurse, who is responsible for providing the home health aide with “written instructions for patient care” and making regular supervisory visits to the patient’s home. 410 Ind.Admin.Code § 17 — 6—l(i), (j).
The FLSA’s legislative history supports our conclusion that the “trained personnel” exception applies only to those individuals whose positions require training comparable to that of a registered or practical nurse:
[T]he exemption [for companionship services] reflects the intent of the committee to exclude from coverage ... companions for individuals who are unable because of age and infirmity to care for themselves. But it is not intended that trained personnel such as nurses, whether registered or practical, shall be excluded.
H.R.Rep. No. 913, 1974 U.S.Code Cong. & Admin.News at 2811, 2845. Clearly, neither Congress nor the Secretary intended to carve out an exception to the “companionship services” exemption for any person with any training, no matter how modest compared to the training of registered and practical nurses. Accordingly, we hold that a domestic service employee who provides “companionship services” within the meaning of 29 U.S.C. § 213(a)(15) will not qualify for overtime compensation under the “trained personnel” exception of 29 C.F.R. § 552.6 unless (1) that employee’s position involves the provision of services required to be performed by someone with training comparable in scope and duration to that of a registered or practical nurse, and (2) the employee in fact has received such training.[9]
*1311 III. CONCLUSION
The services performed by Carol Cox as a home health aide did not require training comparable to that received by a registered or practical nurse. Moreover, Carol Cox’s training as a home health aide did not approach the training of a registered or practical nurse. Thus, she was not entitled to receive overtime compensation under the FLSA. Accordingly, the judgment of the district court is
AFFIRMED.

. Section 7(a)(1) of the FLSA provides that
no employer shall employ any of his employees ... for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.
29 U.S.C. § 207(a)(1).

. Home health aide training programs may be offered by any approved home health agency. See 410 Ind.Admin.Code § 17 — 6—1(f) (“A home health aide training program may be offered by any organization except a home health agency that has been determined to be out of compliance with one (1) or more of the requirements of this section within any of the twelve (12) months before the training program is to begin”).

. Indiana regulations provide that home health aides “shall be selected on the basis of such factors as ability to read, write, and carry out directions, and maturity and ability to deal effectively with the demands of the job. They are closely supervised to ensure their competence in providing care.” 410 Ind.Admin.Code § 17-6-1(d).

. Indiana requires a trainee to undergo thirty hours of classroom instruction as well as seventy-five hours of training under the supervision of a licensed nurse as a prerequisite to certification as a CNA. 410 Ind.Admin.Code § 16.2-2-5(d).

. Cox, a high school graduate, had also completed one year of business college, was certified to perform cardiopulmonary resuscitation ("CPR"), and had studied some pharmacology, first aid, nutrition, and urinalysis when she was working toward certification as a qualified medication aide.

.Among other assignments, Cox had provided long-term care for a patient with amyotrophic lateral sclerosis (Lou Gehrig's disease) and for another patient with an obsessive-compulsive disorder. Cox had performed tasks such as administering complete bed baths, positioning and turning patients in bed, tube-feeding, the taking and recording of vital signs, bowel and bladder training, changing and cleaning patients’ catheters, administering enemas, range-of-motion exercise training, speech training, and inserting non-medicated suppositories.

. An employer found to have violated § 7 of the FLSA is liable to the employee for the amount of unpaid overtime compensation and an additional amount, equal to the amount of unpaid overtime compensation, in liquidated damages. 29 U.S.C. § 216(b).

. We presume that the court in McCune, in using the term "on-the-job training,” was referring to the additional training required for the care of individual patients.

. Our holding is also consistent with the decisions of those district courts which have addressed this issue. See, e.g., Toth v. Green River Regional Mental Health/Mental Retardation Bd., 753 F.Supp. 216, 217-18 (W.D.Ky.1989), aff'd sub nom. Hengesback v. Green River Regional *1311 Mental Health/Mental Retardation Bd., 985 F.2d 560 (6th Cir.1993); Sandt v. Holden, 698 F.Supp. 64, 67 (M.D.Pa.1988).