Kent and Amy **BOWLER**, husband and wife; Eduardo and Flora Rivera, husband and wife; and John and Mira Morgan, husband and wife, Plaintiffs and Appellants,

v.

**DESERET VILLAGE ASSOCIATION, INC.**, a Utah corporation; Lee Childs, Leroi Nelson, Evelyn Fugate, Ray Beckham, Jim Chapman, and George Money, individuals; and Does 1 through 100, Defendants and Appellees.

No. 950363.

Supreme Court of Utah.

Aug. 20, 1996.

David G. Turcotte, Provo, for plaintiffs.

Michael E. Blue, Robert O. Rice, Salt Lake City, for defendants.

DURHAM, Justice:

Plaintiffs Kent and Amy Bowler, Eduardo and Flora Rivera, and John and Mira Morgan appeal from a district court decision denying their motion for summary judgment and granting summary judgment in favor of defendants Deseret Village Association, Inc. (Deseret Village), and others. Plaintiffs contend that the trial court erred in holding that they were exempt from the minimum wage and overtime protections of the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201 to 219 (1994 & Supp.1995). We affirm in part and reverse in part.

Deseret Village is a privately funded, nonprofit Utah corporation which provides a residential and vocational "development habitation" for fourteen marginally mentally and physically handicapped adults. Deseret Village employed plaintiffs to provide residents with general nurturing and companionship, emotional and spiritual support, fellowship, care, and protection. Pursuant to contract, they also performed a variety of maintenance services for Deseret Village, including meal preparation, cleaning laundry areas, general cleaning, washing vehicles, cleaning the garage, and maintaining the yards and grounds. Although residents were responsible for cleaning their own living quarters, plaintiffs supervised them. Deseret Village provided plaintiffs with an apartment to live in, a stipend for food and supplies, and a monthly salary of $350 to $400.

In 1994, plaintiffs filed an action in the district court seeking the minimum wage and overtime protections of the FLSA, 29 U.S.C. §§ 206(f), 207 (1994 & Supp.1995). Defendants moved for summary judgment on the basis that under section 213(a)(15) of the FLSA, plaintiffs' services were exempt from the minimum wage and overtime protections because they qualified as "companionship" services. Plaintiffs objected and moved for summary judgment. The district court, however, determined that plaintiffs were domestic service employees who provided companionship services to the residents of Deseret Village under section 213(a)(15) of the FLSA and were therefore exempt from the minimum wage and overtime protections. Moreover, the court held that the general household exception to the companionship services exemption did not apply to plaintiffs as a matter of law. The court therefore granted defendants' motion for summary judgment. Plaintiffs appealed to the Utah Court of Appeals, which transferred plaintiffs' appeal to this court pursuant to section 78-2-2(3)(b) of the Utah Code.

Summary judgment is appropriate when the record indicates that no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. Utah R.Civ.P. 56(c); *Harline v. Barker*, 912 P.2d 433, 438 (Utah 1996). In *Walling v. General Industries Co.*, the United States Supreme Court held that questions regarding an employee's inclusion within one of the exemptions of the FLSA are questions of fact and should be overturned only where the judgment is clearly erroneous. 330 U.S. 545, 550, 67 S.Ct. 883, 885, 91 L.Ed. 1088 (1947); *see also Legg v. Rock Prods. Mfg. Corp.*, 309 F.2d 172, 174 (10th Cir.1962). In this case, however, the district court granted summary judgment in favor of defendants as a matter of law, finding no issue of material fact. "Should we conclude that a genuine issue of material fact exists, we must reverse the grant of summary judgment and remand for trial on that issue." *Christensen v. Swenson*, 874 P.2d 125, 127 (Utah 1994) (citing *Atlas Corp. v. Clovis Nat'l Bank*, 737 P.2d 225, 229 (Utah 1989)). " 'Because entitlement to summary judgment is a question of law, we accord no deference to the trial court's resolution of the legal issues presented.' " *Harline*, 912 P.2d at 438 (quoting *K & T, Inc. v. Koroulis*, 888 P.2d 623, 627 (Utah 1994)). Thus, we review de novo a grant of summary judgment based on statutory construction. *Id.*

The FLSA generally provides minimum wage and overtime protection for domestic

**12**

service employees.[1] 29 U.S.C. §§ 206(f), 207. Section 213(a)(15) of the FLSA, however, exempts from these protections "any employee employed in domestic service employment to provide *companionship services* for individuals who (because of age or infirmity) are unable to care for themselves (as such terms are defined and delimited by regulations of the Secretary)." (Emphasis added.)

■ * Plaintiffs first contend that they are not subject to section 213(a)(15) because they are not domestic service employees. They claim that the trial court erred in holding that they were domestic service employees because they performed services of a household nature in a privately funded residence. "Domestic service employment" is defined by federal regulation as

> services of a household nature performed by an employee in or about a private home (permanent or temporary) of the person by whom he or she is employed. The term includes employees such as cooks, waiters, butlers, valets, maids, housekeepers, governesses, nurses, janitors, laundresses, caretakers, handymen, gardeners, footmen, grooms, and chauffeurs of automobiles for family use.... This listing is illustrative and not exhaustive.

29 C.F.R. § 552.3 (1995). The regulations also explain that the definition of *"domestic service employment* ... is derived from the regulations issued under the Social Security Act and from 'the generally accepted meaning' of the term. Accordingly, the term includes persons who are frequently referred to as 'private household workers.' "[2] *Id.* § 552.101(a) (citation omitted). The House Report on section 213(a)(15) defines the term similarly:

> The term "domestic service" employees is not defined in the Act. However the generally accepted meaning of domestic service relates to services of a household nature performed by an employee in or about the private home of the person by whom he or she is employed.... Generally, domestic service ... includes services performed by persons employed as cooks, butlers, valets, maids, housekeepers, governesses, janitors, laundresses, caretakers, handymen, gardeners, footmen, grooms, and chauffeurs of automobiles for family use.

H.R.Rep. No. 913, 93d Cong., 2d Sess., *reprinted in* 1974 U.S.C.C.A.N. 2811, 2845. In the instant case, plaintiffs provided Deseret Village with a variety of maintenance services, including preparing meals, cleaning laundry areas, general cleaning, washing vehicles, cleaning the garage, and maintaining the yards. These are clearly the type of services the regulation envisioned as domestic services. *See McCune v. Oregon Senior Servs. Div.*, 894 F.2d 1107, 1108 (9th Cir. 1990) (holding that daily services such as general cleaning, cooking, and providing clients with medical care and hygiene fall within domestic services portion of FLSA).

---

1. The legislative history indicates that Congress intended, with few exceptions, to include within the coverage of the FLSA "all employees whose vocation is domestic service." S.Rep. No. 93–690, 93d Cong., 2d Sess. 20 (1974) U.S.Code Cong. & Admin.News 2811, 2823. The Senate Report expresses a legislative desire to increase the economic status of domestic service employees generally, thereby increasing the supply of such workers:

    It is also important to note that even in a period of high unemployment such as exists today, the demand for household workers is not being met. Bringing domestic workers under the Fair Labor Standards Act would not only assure them a minimum wage but would enhance their status in the community.... Minimum wages should serve to attract skilled workers to these jobs at a time when the need for skilled domestic employees is greatly increasing.

*Id.* at 19 U.S.Code Cong. & Admin.News p. 2823.

2. The regulations issued under the Social Security Act state:

    Services of a household nature performed by an employee in or about a private home of the person by whom he is employed constitute domestic service in a private home of the employer.... In general, services of a household nature in or about a private home include services performed by cooks, waiters, butlers, housekeepers, governesses, maids, valets, baby sitters, janitors, laundresses, furnacemen, caretakers, handymen, gardeners, footmen, grooms, and chauffeurs of automobiles for family use.... [S]ervices not of a household nature [include] such services performed as a private secretary, tutor, or librarian, even though performed in the employer's home....

20 C.F.R. 404.1027(j) (1975).

Plaintiffs, however, contend that they were not domestic service employees because the services they provided were not "performed in or about the private home of [their] employer." *See* 29 C.F.R. §§ 552.3, 552.101 (1995). Neither the FLSA, its regulations, nor its legislative history defines the exact meaning of "private home." Therefore, we must "closely examine the living arrangement to determine whether the residences where the Plaintiff works should be characterized as 'private homes.'" *Linn v. Developmental Servs. of Tulsa, Inc.*, 891 F.Supp. 574, 579 (N.D.Okla.1995). The regulations state that the definition of "private home" comes from "the generally accepted meaning" of the term and that a "private home" could include a "separate and distinct dwelling maintained by an individual or a family in an apartment house, condominium or hotel." 29 C.F.R. § 552.101(a). The regulations, however, exclude from the definition "dwelling places which are primarily rooming or boarding houses" where such are "commercial or business establishments." *Id.* § 552.101(b). Similarly, the House Report states that "a dwelling house used primarily as a boarding or lodging house for the purpose of supplying such services to the public, as a business enterprise, is not a private home." H.R.Rep. No. 913, 1974 U.S.C.C.A.N. at 2845. Section 203(r)(2) of the FLSA, in defining an enterprise, states:

[T]he activities performed by any person or persons—

(A) in connection with the operation of a hospital, [or] an *institution* primarily engaged in the care of the sick, the aged, the mentally ill or defective who reside on the premises of such institution, ... (regardless of whether ... such hospital, institution, or school is operated for profit or not for profit),

. . . .

... shall be deemed to be activities performed for a business purpose.

(Emphasis added.)

■■■ No federal case law has determined whether a residence identical to Deseret Village would qualify as a private home under the FLSA.[3] The statute and its regulations, however, indicate that the definition of a "private home" exists along a continuum. A traditional family home in which a single family resides would clearly be a "private home," but a "private home" would not include an "institution primarily engaged in the care of the sick, the aged, the mentally ill" or a boarding house used for business or commercial purposes. However, various living situations fall in between these extremes which may or may not be "private homes" for the purposes of 29 U.S.C. § 213(a)(15).[4] Because the definition of "private home" envisions various living arrangements, we consider four factors, none of which alone is dispositive, to determine whether a living arrangement is more like a "private home" or an institution or a business enterprise. These factors are (1) its source of funding;[5] (2) access to the facility

---

3. A few federal courts have analyzed whether employees of a state-funded residential home would qualify for FLSA protections. In *McCune v. Oregon Senior Services Division*, for example, the Ninth Circuit Court of Appeals held that appellants who worked as full-time, live-in attendants for the elderly but whose clients paid for their services from federal and state funds were domestic service employees under the FLSA. 894 F.2d 1107, 1108 (9th Cir.1990). The court therefore found that a "private home" could receive state and federal funds. *But see Linn v. Developmental Servs. of Tulsa, Inc.*, 891 F.Supp. 574, 579–80 (N.D.Okla.1995) (holding residence which was 95% state-funded was not "private home" where employer acquired furniture for residents, had keys to residences, decided number of people who lived in residences, and received state funds to pay landlord); *Lott v. Rigby*, 746 F.Supp. 1084, 1087 (N.D.Ga.1990)

(holding that publicly funded, institutional group home could not be a "private home" for its residents even though it was their sole residence).

4. For example, an apartment paid for by two separate families who join forces to provide for their physically or mentally challenged adult children would more closely resemble a private home for purposes of the FLSA.

5. *See* 29 C.F.R. § 552.101(a) (providing that "private home" could include separate and distinct dwelling "maintained" by individual or family); *Lott*, 746 F.Supp. at 1087 (holding that state-maintained group home is not "private home"). *But cf. McCune v. Oregon Senior Servs. Div.*, 894 F.2d 1107, 1108 (stating that "private home" may receive state and federal funds).

by the general public;[6] (3) whether it is organized for profit or is a nonprofit organization;[7] and (4) the size of the organization.[8]

Applying these factors to Deseret Village, we hold that it is a "private home" for purposes of 29 U.S.C. § 213(a)(15). First, Deseret Village was originally financed and constructed by family members of the mentally disabled individuals who reside there. Deseret Village continues to be funded entirely by the family members and friends of the residents. Moreover, Deseret Village receives no municipal, county, state, or federal financial assistance. Second, Deseret Village is not open to the public. Third, Deseret Village is a nonprofit Utah corporation organized to care solely for the children of families who finance the village. Finally, Deseret Village houses only fourteen disabled residents. Combining all these factors, we find that it is more like a "private home" than an "institution" or a business enterprise. Therefore, we conclude that plaintiffs were domestic service employees.

Plaintiffs next claim that even if they were domestic service employees, their general household work exceeded twenty percent of the total weekly hours worked, making them ineligible for the companionship services exemption in section 213(a)(15). The parties do not dispute that plaintiffs provided companionship services and would thus be exempted from the minimum wage and overtime protection under section 213(a)(15) for any employee who provided "companionship services for individuals who (because of age or infirmity) are unable to care for themselves."[9] The regulations, however, state:

> *Companionship services* ... may include household work *related to the care of the aged or infirm person* such as meal preparation, bed making, washing of clothes, and other similar services. They may also include the performance of general household work: *Provided, however,* That such work is incidental, *i.e.,* does not exceed 20 percent of the total weekly hours worked.

29 C.F.R. § 552.6 (1995) (some emphasis added). Thus, any general household work not directly related to an individual resident would be subject to the twenty percent limit. We agree with the distinction made by the United States District Court for the Western District of Kentucky in *Toth v. Green River Regional Mental/Health Retardation Board, Inc.:*

> Dusting or cleaning the client's room or the living room "appears to be routine, general household work, rather than work related to the individual. Cleaning a spill by the client in either room, by contrast, would be non-routine care more related to the individual than to the general household, and would not be included in the twenty percent figure."

753 F.Supp. 216, 217 (W.D.Ky.1989) (quoting *McCune v. Oregon Senior Servs. Div.,* 643 F.Supp. 1444, 1450 (D.Or.1986)).

In respect to this history, we agree with the United States Ninth Circuit Court of Appeals when it said:

> [T]he statements included in the legislative history are merely policy justifications for the exception. The plain language of the statute does not make this "breadwinner/nonbreadwinner" distinction, and we decline to fashion one. The proposal for such a change to the FLSA is more appropriately addressed to the legislative branch.

*McCune,* 894 F.2d at 1110. Furthermore, there are strong policy reasons for applying the exceptions to companionship service employees. By exempting these services from the minimum wage and overtime protections, these critical services are more affordable and are more likely to reach the elderly and infirm than they otherwise would be. *See id.* Hence, they allow the infirm and elderly to avoid institutionalization. *Id.*

---

6. *See* 29 C.F.R. § 552.101(b) (providing that "private home" cannot include rooming or boarding house which is commercial or business enterprise).

7. *Id.*

8. *See* 29 U.S.C. § 203(r)(2) (providing that "institution" engaged in care of mentally ill or defective is deemed to be performing business purpose); *Linn,* 891 F.Supp. at 579–80 (stating that group homes of more than three people are not "private homes").

9. The House Report states that one reason the exceptions to minimum wage and overtime protections apply to babysitters and companions is that these workers "are not regular breadwinners or responsible for their families' support." H.R.Rep. No. 913, 1974 U.S.C.C.A.N. at 2845.

In the instant case, the trial court held that *all* the work and services performed by plaintiffs were "directly related" to the care of the residents of Deseret Village. We disagree. The record shows that plaintiffs provided Deseret Village with some general maintenance services, including cleaning laundry areas, general household cleaning (through use of mop, duster, and vacuum), washing vehicles, cleaning the garage, and maintaining the yards and grounds. These services constitute general household services. Although they benefit the individual residents of Deseret Village, they are ultimately provided to keep Deseret Village generally clean for the benefit of all employees and the family members and friends who visit the residents. However, a genuine issue of material fact remains regarding whether these general household services were incidental or amounted to more than twenty percent of the total weekly hours worked. We thus remand this issue to the trial court to determine how many hours plaintiffs spent doing general household work not directly related to the care of Deseret Village's residents.

We affirm the trial court's summary judgment on the question of plaintiffs' status as domestic service employees under the FLSA but reverse its ruling on the characterization of all their general household services as "incidental." We remand for trial on the question of whether plaintiffs' general household services exceeded the twenty percent exemption threshold.

ZIMMERMAN, C.J., STEWART, Associate C.J., and HOWE and RUSSON, JJ., concur in Justice DURHAM's opinion.