Evelyn COKE, individually and on behalf of others similarly situated, Plaintiff,

v.

LONG ISLAND CARE AT HOME, LTD. and Maryann Osborne, Defendants.

No. 02–CV–2010(TCP)(ARL).

United States District Court, E.D. New York.

May 23, 2003.

Leon Greenberg, New York City, for Evelyn Coke, individually and on behalf of others similarly situated, Plaintiff.

Arnold S. Klein, Meltzer, Lippe & Goldstein, LLP, Mineola, NY, for Long Island Care at Home, Ltd., Maryann Osborne, Defendants.

## MEMORANDUM AND ORDER

PLATT, District Judge.

Defendants Long Island Care At Home, Ltd. ("LIC") and Maryann Osborne ("Osborne")(collectively "Defendants") move for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Plaintiff Evelyn Coke ("Coke" or "Plaintiff") opposes the motion and also moves for the circulation of a Notice of Pendency and a Consent to Joinder to similarly situated persons pursuant to 29 U.S.C. § 216(b). This Court heard oral arguments on April 2, 2003.

At issue is whether certain regulations promulgated by the Department of Labor ("DOL") pursuant to the Federal Fair Labor Standards Act, 29 U.S.C. § 201 *et. seq.* (the "FLSA") are legally enforceable. At oral argument Plaintiff's counsel clarified that Plaintiff could not meet the requirements of the relevant regulations as written and that the purpose of this action was to determine the validity of such regulations.[1] (Tr. at 2–5.) As set forth below, because the Court finds that the DOL's regulations are proper Defendants' Motion is GRANTED.

## BACKGROUND

### A. Factual Background

Plaintiff is a resident of the State of New York, County of Queens, and a former employee of Defendants. LIC is a corporation formed pursuant to the laws of New York State. Osborne is the owner

---

1. References to the transcript of the April 2, 2003 are cited as Tr. at _.

and sole shareholder, as well as a director and officer of LIC.

The pleadings provide little factual background.[2] According to the Complaint, Plaintiff has been employed by Defendant since 1997 and that "her occupations include, but are not limited to, work as a home healthcare attendant." (Compl. at 10.) Plaintiff contends that despite working more than 40 hours a week she never received overtime payments and that her hourly wage was less the minimum wage outlined in the FLSA.

## B.  Plaintiff's Claims

Plaintiff has asserted two claims in her Complaint. The First Claim is brought under the FLSA on behalf of Plaintiff and any other persons who consent in writing to join this action pursuant to 29 U.S.C. § 216(b). Plaintiff contends that she was entitled to, but was not paid, minimum wages and an overtime hourly wage of time and one-half for all hours worked in excess of forty hours per week. Plaintiff's Second Claim is brought under the Labor Law of the State of New York and the New York Minimum Wage Act ("NYM-WA"), on behalf of Plaintiff and all persons similarly situated. The nature of the claims are identical to those under the First Claim. As relief, Plaintiff requests a judgement for unpaid overtime wages and minimum wages, liquidated damages, attorney's fees, interest and costs as provided for by the FLSA.

Defendant has asserted nine affirmative defenses, including that, workers such as Plaintiff are exempt from eligibility for minimum wage and overtime compensation under the FLSA and the FLSA's implementing regulations.

At oral argument, the Court inquired of Plaintiff's counsel whether he could amend the Complaint to sufficiently allege a cause of action under the FLSA and the regulations promulgated thereunder. Counsel indicated that he could not. (Tr. at 2–5.)

## DISCUSSION

### A.  Rule 12(c) Standard

Rule 12(c) provides that,

[a]fter the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings. If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided by Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

Judgement on the pleadings, pursuant to Fed.R.Civ.P. 12(c) is appropriate where material facts are undisputed and a judgment on the merits is possible merely by considering the contents of the pleadings. *See Mennella v. Office of Court Admin.*, 938 F.Supp. 128, 131 (E.D.N.Y.1996) (Spatt, J.)(citing *Sellers v. M.C. Floor Crafters, Inc.*, 842 F.2d 639, 642 (2d Cir. 1988)). "In considering a motion for a judgment on the pleadings, the Court must accept as true all of the non-movant's well pleaded factual allegations, and draw all reasonable inferences in favor of the non-movant." *Id.* (citing *Davidson v. Flynn*, 32 F.3d 27, 29 (2d Cir.1994)).

### B.  The FLSA Generally

The FLSA of 1938 was enacted for the purpose of regulating minimum wages,

---

**2.**  While the Plaintiff has provided more details of her employment in an affidavit, the Court may not consider such statements when deciding a Rule 12(c) motion.

maximum working hours, and child labor in industries within interstate commerce. While the FLSA sought to protect some of the nation's lowest paid workers, it did not apply to all employees. Since 1938, Congress has extended the FLSA's coverage to many other low-paying occupations through periodic amendments.

Among these extensions of coverage were the amendments of 1974, in which Congress extended coverage to employees in "domestic service." Through the 1974 amendments Congress intended to "not only raise the wages of these workers but [to] improve the sorry image of household employment." H.R.Rep. No. 913, 93rd Cong., 2nd Sess., *reprinted in,* 1974 U.S.Code Cong. & Admin. News 2811, 2843. The 1974 amendments made domestic service employees subject to the minimum wage and maximum working hours requirements of the FLSA.

The 1974 amendments Congress do provide for a limited exemption from the FLSA for certain domestic service employees, as set forth in 29 U.S.C. § 213(a)(15) ("Section 213(a)(15)"). Section 213(a)(15) provides, in pertinent part, that the provisions minimum wage and maximum hour requirements of Sections 206 and 207 of the FLSA shall not apply to,

> (15) any employee employed on a casual basis in domestic service employment to provide babysitting services or any employee employed in domestic service employment to provide companionship services for individuals who (because of age or infirmity) are unable to care for themselves (*as such terms are defined and delimited in the regulations of the Secretary* ). (emphasis added).

Pursuant to this Congressional delegation of authority, the DOL promulgated 29 C.F.R. § 552.6 ("Section 552.6") which defines "companionship services." It states, in pertinent part,

> the term companionship services shall mean those services which provide fellowship, care and protection for a person who, because of advanced age or physical or mental infirmity, cannot care for his or her own needs. Such services may include household work related to the care of the aged or infirm person such as meal preparation, bed making, washing of clothes, and other similar services. They may also include the performance of general housework: Provided however, that such work is incidental, i.e., does not exceed 20 percent of the total weekly hours worked.

In discussing the policy reasons for the "companionship services" exemption the Ninth Circuit has stated, "[w]e are informed that these critical services reach more elderly or infirm individuals than they otherwise would precisely because the care-providers are exempt from the FLSA". *McCune v. Oregon Senior Services Division,* 894 F.2d 1107, 1110 (1990).

"Domestic service" itself is not defined in the FLSA. However, the legislative history of the 1974 amendments state,

> the generally accepted meaning of domestic service relates to services of a household nature performed by an employee in or about a private home of the person by whom he or she is employed. The domestic service must be performed in a private home which is a fixed place of abode of the individual or family ... [g]enerally, domestic service in and about a private home includes services performed by persons employed as cooks, butlers, valets, maids, housekeepers, governesses, janitors, laundresses, caretakers, handymen, gardeners, footmen, grooms, and chauffeurs of automobiles for family use. H.R.Rep. No.93–913, 93rd Cong., 2d Sess., reprinted in (1974) U.S.Code Cong. & Ad.News 2811, 2845.

The legislative history also "reveals that Congress used the term 'domestic service employment' interchangeably with the terms 'domestic service in households,' 'private household workers,' and 'household employment.'" *Lott v. Rigby*, 746 F.Supp. 1084, 1088 (N.D.Ga.1990)(citing H.R.Rep. No. 913, 93rd Cong., 2nd Sess., *reprinted in*, 1974 U.S.Code Cong. & Admin. News 2811, 2842–2843).

The DOL has incorporated the legislative history into 29 C.F.R. § 552.3 ("Section 552.3") which states that domestic service "refers to services of a household nature performed by an employee in or about a private home (permanent or temporary) of the person by whom he or she is employed." 29 C.F.R. § 552.3. Importantly however, through 29 C.F.R. § 552.109(a) ("Section 552.109(a)") the DOL extends the exemption to "[e]mployees who are engaged in providing companionship services, as defined by § 552.6, and *who are employed by an employer or agency other than the family or household using their services.*" 29 C.F.R. § 552.109(a)(emphasis added.)

### C. Validity of Sections 552.6 and 552.109(a)

Plaintiff argues that both of these regulations are inconsistent with Congress's intent of extending coverage of the FLSA to domestic service employees. Specifically, Plaintiff argues that the definition of "companionship services" in Section 552.6 is overbroad and that Section 552.109(a) improperly extends the exemption to employees who are employed by an agency.[3]

In regards to Section 552.109(a), Plaintiff asserts that prior to the 1974 amendments home healthcare employees employed by certain agencies would have been covered by "enterprise coverage" as set forth in 29 U.S.C. §§ 203(r), 203(s), 206(a), 207(a), which extends FLSA coverage to all employees of businesses that exceed a certain gross revenue. Plaintiff cites *Homemakers Home and Health Care v. Carden*, 538 F.2d 98 (6th Cir.1976) to support her position. In that case the Sixth Circuit upheld a stipulated finding of fact that the plaintiff, who was a home health care services company, was subject to FLSA enterprise coverage. Plaintiff reasons that in enacting the 1974 amendments Congress intended to extend coverage to domestic services employees, and not to remove coverage already provided to employees employed by FLSA "enterprises." (Pl. Suppl. Mem. at 8.)

Nearly all courts, however, have upheld both of these regulations. *See e.g., McCune v. Oregon Senior Services Division*, 894 F.2d 1107 (1990)(upholding Section 552.6); *Salyer v. Ohio Bureau of Workers' Compensation*, 83 F.3d 784 (6th Cir. 1996)(same); *Johnston v. Volunteers of America, Inc.*, 213 F.3d 559 (10th Cir.2000)(upholding Section 552.109). One recent district court decision is to the contrary. *See Harris v. Dorothy L. Sims Registry*, 2001 WL 78448, 2001 U.S. Dist. LEXIS 23263 (N.D.Ill.2001). The Second Circuit has never expressly ruled on these issues.

The Supreme Court has "long recognized that considerable weight should be accorded to an executive department's

---

**3.** Subsequent to oral argument, the Court invited the parties to submit additional materials related to the legislative history of the 1974 amendments. Plaintiff's supplemental materials, in part, raised for the first time the issue of whether 552.109 was procedurally invalid due to an alleged failure to comply

with the Administrative Procedures Act, 5 U.S.C. § 553. Because this argument was not raised until several weeks after oral argument, does not appear in the Complaint or Plaintiff's initial brief, and was outside the scope of the Court's invitation, this argument was not considered by the Court.

construction of a statutory scheme it is entrusted to administer, and the principle of deference to administrative interpretations" has consistently been followed. *Chevron U.S.A., Inc. v. Natural Resources Defense Council Inc.*, 467 U.S. 837, 844, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). If there is "statutory ambiguity and the agency's interpretation is reasonable, its interpretation must receive deference." *Yellow Transp., Inc. v. Michigan*, 537 U.S. 36, 123 S.Ct. 371, 378, 154 L.Ed.2d 377 (2002) (citing *Chevron*, 467 U.S. at 844, 104 S.Ct. 2778). "[L]egislative regulations are given controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute." *Id.*

In deciding whether a regulation is reasonable, the Supreme Court has stated, [w]e ask first whether 'the intent of Congress is clear' as to 'the precise question at issue.' If, by 'employing traditional tools of statutory construction,' we determine that Congress' intent is clear, 'that is the end of the matter.' But 'if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute.' If the agency's reading fills a gap or defines a term in a reasonable way in light of the Legislature's design, we give that reading controlling weight, even if it is not the answer 'the court would have reached if the question initially had arisen in a judicial proceeding.' *Regions Hospital v. Shalala*, 522 U.S. 448, 457,

118 S.Ct. 909, 139 L.Ed.2d 895 (1998) (citing *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842–843, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984)).

▉▉▉ Moreover, "a long-standing, contemporaneous construction of a statute by the administering agencies is 'entitled to great weight.'" *Leary v. United States*, 395 U.S. 6, 25, 89 S.Ct. 1532, 23 L.Ed.2d 57 (1969) (citations omitted). Where an agency changes its interpretation, "a revised interpretation deserves deference because 'an initial agency interpretation is not instantly carved in stone' and 'the agency, to engage in informed rulemaking, must consider varying interpretations and the wisdom of its policy on a continuing basis.'" *Rust v. Sullivan*, 500 U.S. 173, 186, 111 S.Ct. 1759, 114 L.Ed.2d 233 (1991)(citing *Chevron*, 467 U.S. at 862–864, 104 S.Ct. 2778).[4]

Both Sections 552.6 and 552.109(a) were promulgated in 1975, soon after the 1974 amendments and have been in effect for over twenty-eight years and are therefore entitled to great weight. The DOL did propose amendments to both regulations in January 2001, but those proposed amendments were withdrawn in 2001. In proposing to amend Section 552.6, the DOL stated,

[t]he Department has reevaluated the regulations and determined that—as currently written—they exempt types of employees far beyond those whom Congress intended to exempt when it enacted section 13(a)(15). Therefore,

---

**4.** In addition, the Supreme Court has held that "[w]hen Congress revisits a statute giving rise to a longstanding administrative interpretation without pertinent change, the 'congressional failure to revise or repeal the agency's interpretation is persuasive evidence that the interpretation is the one intended by Congress.'" *CFTC v. Schor*, 478 U.S. 833, 846, 106 S.Ct. 3245, 92 L.Ed.2d 675 (1986) (quot-

ing *NLRB v. Bell Aerospace Co.*, 416 U.S. 267, 274–75, 94 S.Ct. 1757, 40 L.Ed.2d 134 (1974)). Here Congress has amended Section 213 seven times since 1974. *See* Pub.L. 95–151 (1977); Pub.L. 96–70 (1979); Pub.L. 101–157 (1989); Pub.L. 103–329 (1994); Pub.L. 104–88 (1995); Pub.L. 104–188 (1996); Pub.L. 105–78 (1997).

the Department proposes to amend the regulations to revise the definition of 'companionship services,' which sets out the duties that a companion must be employed to perform in order to qualify for the exemption, to more closely mirror Congressional intent. *Federal Register*, Vol. 66, No. 13 (January 19, 2001).

The DOL's proposals emphasized that the proposed amendments were proper due to the significant changes in the home care industry since 1974 and that home care employees are "performing types of duties and working in situations that were not envisioned when the companionship services regulations were promulgated." *Id.* After reviewing the legislative history, the DOL stated that the 1974 amendments were intended "to include all employees whose vocation was domestic service, but to exempt from the coverage babysitters and companions who were not regular bread winners or responsible for their families' support." *Id.*

In proposing to amend Section 552.6, the DOL stated that, "companionship services cannot be so broad as to include someone who essentially is serving as a maid or household worker." *Id.* The DOL then proposed three possible changes of the definition of "companionship services." All three of the proposals increased the emphasis on fellowship as a "critical component of a companion's duties." *Id.*

In proposing to alter Section 552.109(a), the DOL intended to make the exemptions of Section 213(a)(15) applicable "only with respect to the family or household using the worker's services." *Id.* Under the proposal, if an employee was hired by someone other than a member of the family in whose home he or she works, the employee would be covered by FLSA. *Id.* In this proposed amendment, the DOL noted that there was an internal consistency between Section 552.109(a), which allows employees

of agencies to be exempt, and Section 552.3, fashioned from the legislative history, which states that domestic service employment must be "in or about" the private home of the employer. *Id.* Moreover, evidently in reference to "enterprise coverage", the DOL stated that since "[a]nyone who prior to 1974 had worked for a covered placement agency, for example, but who was assigned to work in someone's home, would have been covered previously by the FLSA," it was unlikely that Congress would have sought to change the status of employees who were already covered. *Id.*

In April 2002, the DOL withdrew the proposed amendments because "numerous commenters on the proposed rule, including multiple federal agencies ... seriously called into question the Department's conclusion that there would be little economic impact." *Federal Register*, Vol. 67, No. 67 (April 8, 2002). After reviewing the "rulemaking record as a whole," the DOL terminated the proposal. *Id.*

After the proposed amendments were issued, but before they were withdrawn, one district court did find that the definition of "companionship services" set forth in Section 552.6 was unreasonably broad. In *Harris v. Dorothy L. Sims Registry*, 2001 WL 78448, 2001 U.S. Dist. LEXIS 23263 (N.D.Ill.2001), the court found that although an agency's interpretation of a statute is presumptively valid, "courts may not follow agency regulations that are inconsistent with congressional intent." *Id.*, 2001 WL 78448, *2, 2001 U.S. Dist. LEXIS 23263 at *8 (citing *Chevron*, 467 U.S. at 845, 104 S.Ct. 2778). In coming to its conclusion, the court relied heavily on the proposed amendments.

Applying the standard set forth in *Chevron U.S.A., Inc. v. Natural Resources Defense Council Inc.*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), the *Harris*

court first found that Section 213(a)(15) of the FLSA was ambiguous, since there was more than one reasonable interpretation of "companionship services." The plaintiffs in *Harris* argued that the term "referred to employees hired primarily to act as a companion for the elderly." *Harris*, 2001 WL 78448, *3, 2001 U.S. Dist. LEXIS 23263 at *9–*10. Defendants contended that the term meant "being with someone to help them with their extreme needs." *Id.*

After finding Section 213(a)(15) ambiguous, the *Harris* court then considered whether Section 552.6 was consistent with the language, origins and purpose of the statute. In this stage of the analysis, the court first considered the legislative history, from which it found, "[i]t is clear the senators did not intend to exempt employees whose primary job responsibilities went beyond fellowship and protection." *Id.*, 2001 WL 78448, *4, 2001 U.S. Dist. LEXIS 23263 at *12. After a review of the DOL's proposed amendments the court found "it is obvious from the proposed amendments that the DOL agrees that the current definition of 'companionship services' under § 552.6 is unreasonable" and that this "alone is sufficient reason to disregard the current version of § 552.6." *Id.*, 2001 WL 78448, *5, 2001 U.S. Dist. LEXIS 23263, at *17. Based on the legislative history and the proposed amendments, the court in *Harris* held that Section 552.6 was invalid, "to the extent it exempts homemakers from [FLSA] coverage." [5] *Id.*

Prior to *Harris*, all other courts had upheld the validity of the regulations. In *McCune v. Oregon Senior Services Division*, 894 F.2d 1107 (1990) the Ninth Cir-

cuit held that the DOL's definition of "companionship services" in Section 552.6 was not contrary to the FLSA and affirmed the district court's granting of summary judgment in favor of defendants.

The plaintiffs in *McCune* were live-in attendants for elderly and infirm individuals unable to care for themselves. The Ninth Circuit, noting the strong deference which is accorded to agencies entrusted to define a specific provision of a statute, held that the 20% limit on general household work was reasonable and upheld the district's courts finding that any household work "related" to the care of the individual would not be counted towards the 20% threshold. In coming to this conclusion, the court quoted parts of the legislative history of the FLSA, which stated:

> The fact that a person performing casual services as baby-sitters or services as companions do some incident of household work does not keep them from begin casual baby-sitters or companions for purposes of this exclusion.

*McCune*, 894 F.2d 1107, 1111 (quoting H.R.Rep. No. 913, 1974 U.S.Code Cong. and Ad. News at 2845).

In dissent in *McCune*, Judge Pregerson did "not propose challenging the agency's interpretation of its mandate when it promulgated section 552.6," but argued that the majority had improperly applied the regulation to the plaintiffs in that case. *McCune*, 894 F.2d at 1114. Judge Pregerson felt that the court should analyze whether the work performed by plaintiffs was actually "incidental" or whether it was only related to the care of their clients. As Judge Pregerson stated, "[t]hough simple laundry work might be 'incidental',

---

**5.** In *Harris*, although the finding that § 552.6 was invalid mooted the argument that domestic employees hired by agencies should not be exempt, the court did note that Section 552.109(a) was also proposed to be amended

for similar reasons Section 552.6 was proposed to be amended. *Id.*, 2001 WL 78448, *5, n. 8, 2001 U.S. Dist. LEXIS 23263, at *17, n. 8.

what of bed-pan duty, catheterization, and soiled garments for bed-ridden invalids? These duties are certainly related to the care of the attendant's clients, but are by no means incidental." *Id.*

Courts have similarly upheld Section 552.109(a). Most recently, in *Johnston v. Volunteers of America, Inc.,* 213 F.3d 559 (10th Cir.2000), the Tenth Circuit rejected plaintiffs' claims that they were entitled to overtime pay under the FLSA because they were not employed by the individual receiving the care. Finding that Section 552.109(a) was not "arbitrary, capricious, or manifestly contrary to § 213(a)(15)", the Court held that "the fact that domestic service employees are not employed by the individual receiving care, does not alone exclude them from the exemption." *Id.* at 562. In refuting a similar claim, another court has stated, "[p]laintiff has identified no authority, and the Court is unable to locate any, that supports this view of the companionship services exemption. In fact, the Court is not aware of any cases where the subject employees were employed by the individual client, rather than by an agency." *Terwilliger v. Home of Hope, Inc.,* 21 F.Supp.2d 1294, 1299, n. 2 (N.D.Ok.1998).

■ In regard to Plaintiff's argument that Congress did not intend to remove "enterprise coverage" to those employees who worked for covered agencies, the wording of the Section 213(a)(15) and the statements of the Administrator of the Wage and Hour Division of the DOL (the "Administrator") support the conclusions of the *Johnston* and *Terwilliger* courts that Section 552.109(a) is valid. Section 213(a)(15), describes who is covered by the companionship exemption as "**any employee** employed on a casual basis in domestic service employment." (emphasis added.) The Administrator, in adopting 552.109(a) explicitly noted this language and stated

"[t]his interpretation is more consistent with the statutory language and prior practices concerning other similarly worded exemptions". 40 Fed.Reg. 7404 (1975). It may be that Congress did not intend to exempt employees hired by a third-party. However, based on the wording of the statute and the lack of any clear legislative history discussing this specific issue, this Court may not say that the Administrator's interpretation is arbitrary or unreasonable.

This Court does find the reasoning of *Harris* and the DOL's statements in the proposed amendments somewhat compelling. However, other factors counsel against holding the regulations unenforceable. The strong deference courts must afford to federal agencies regulations, the explicit grant of authority to the DOL to define and delimit Section 213(a)(15), the withdrawal of the proposed amendments, and the fact that these regulations have been in effect for over twenty-eight years, strongly cautions against a finding that these regulations are unenforceable.

Section 213(a)(15) of the FLSA explicitly gives the DOL the right to define the terms "companionship services" and "domestic service." The 20% requirement seemingly attempts to keep the exemption limited to those who predominately provide companionship, which is consistent with the legislative history. In regards to Section 552.109(a), the Court notes that the reasoning behind the companionship services exemption is arguably to allow those in need of such services to be able to find such assistance at a price they can afford. Whether that service is provided by the direct hiring of an employee or through the use of an agency, the objective is still the same; to allow for the procurement of companionship services without being required to meet the minimum wage and overtime provisions of the FLSA.

■ The DOL's interpretation of Section 213(a)(15) in 1975 evidence that it believed the regulations were proper at the time the 1974 amendments were enacted. The DOL's withdrawal of the proposed amendments shows that it still believes that these long-standing regulations are appropriate in the current home healthcare environment. Despite amending Section 213(a)(15) seven times since 1074, Congress has chosen not to act. While this Court is sympathetic to home care workers who perform such laborious work under difficult circumstances, the judiciary is not in a position to strike a regulation which is reasonable in light of the DOL's explicit Congressional mandate. Accordingly, the Court finds that Sections 552.6 and 552.109(a) are not arbitrary, capricious or manifestly contrary to the FLSA.

### D. The Sufficiency of the Complaint

#### 1. The FLSA Claim

■ Having found the regulations proper, Plaintiff must properly allege a claim under them. The Court is aware that all of the cases cited above were in the context of motions for summary judgement, not motions on the pleadings pursuant to Rule 12(c). Nonetheless, the Complaint in its current form contains only conclusory allegations that Plaintiff was a home healthcare attendant and that she is therefore entitled to minimum wage and overtime pursuant to FLSA. Plaintiff's counsel clarified at oral argument that his client could not properly allege a claim under the FLSA based on the regulations as they currently stand. Plaintiff's counsel's agreement at oral argument that this was a test case and that his client could not meet the standards of Section 552.6 confirm that Plaintiff can not properly allege a violation of the FLSA and the DOL's regulations promulgated thereunder. Accord-

ingly, Defendants' motion on the FLSA claim is granted.

#### 2. State Law Claim

■ Courts have consistently held that the dismissal of a plaintiff's federal claims merits dismissal of his pendent State law claims. *Carnegie–Mellon Univ. v. Cohill,* 484 U.S. 343, 350, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988); *Maric v. St. Agnes Hosp. Corp.,* 65 F.3d 310, 314 (2d Cir.1995)(citing *United Mine Workers of America v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966)); *In re Merrill Lynch Ltd. P'ships Litig.,* 154 F.3d 56, 61 (2d Cir.1998). Having concluded that Defendants are entitled to judgment on the pleadings as to Plaintiff's underlying federal claims, this Court declines to exercise pendent jurisdiction over the corresponding State law claims. Plaintiff's State law claims are therefore dismissed without prejudice.

### CONCLUSION

Defendants' Motion for judgement on the pleadings is GRANTED. Plaintiff's Motion for circulation of a Notice of Pendency and of a Consent to Joinder to similarly situated persons pursuant to 29 U.S.C. § 216(b) is DENIED. The Clerk of the Court is directed to close this case.

SO ORDERED.